1  GIBSON, DUNN & CRUTCHER LLP
   MICHAEL LI-MING WONG (SBN 194130)
2    mwong@gibsondunn.com
   THAD A. DAVIS (SBN 220503)
3    tdavis@gibsondunn.com
   555 Mission Street, Suite 3000
4  San Francisco, CA 94105-0921
   Telephone: 415.393.8200
5  Facsimile:  415.393.8306

6  GIBSON, DUNN & CRUTCHER LLP
   JOSHUA A. JESSEN (SBN 222831)
7    jjessen@gibsondunn.com
   PRIYANKA RAJAGOPALAN (SBN 278504)
8    prajagopalan@gibsondunn.com
   1881 Page Mill Road
9  Palo Alto, CA 94304
   Telephone: 650.849.5300
10 Facsimile:  650.849.5333

11 *Attorneys for Defendant Uber Technologies, Inc.*

12

13              **UNITED STATES DISTRICT COURT**

14             **NORTHERN DISTRICT OF CALIFORNIA**

15

16 | SASHA ANTMAN, individually and on behalf of all others similarly situated, | No. 3:15–cv–01175–LB |

17

   Plaintiff,                          **DEFENDANT UBER TECHNOLOGIES, INC.'S
18                                      NOTICE OF MOTION AND MOTION TO DISMISS
       v.                              PLAINTIFF'S AMENDED COMPLAINT;
19                                      SUPPORTING MEMORANDUM OF POINTS AND
                                        AUTHORITIES**
20 UBER TECHNOLOGIES, INC. and Does 1-
   50,                                 *HEARING:*
21                                     • DATE: SEPTEMBER 17, 2015
          Defendant.                   • TIME: 9:30 A.M.
22                                     • PLACE: COURTROOM C, 15TH FLOOR
                                            THE HONORABLE LAUREL BEELER
23

24

25

26

27

28

Gibson, Dunn &
Crutcher LLP

## NOTICE OF MOTION AND MOTION TO DISMISS AMENDED COMPLAINT

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that at 9:30 a.m. on September 17, 2015, or as soon thereafter as the matter may be heard by the above-entitled Court, in the courtroom of the Honorable Laurel Beeler, 450 Golden Gate Ave., San Francisco, CA 94102, Defendant Uber Technologies, Inc. ("Uber") will and hereby does move for an order dismissing Plaintiff's Amended Complaint (the "Am. Compl.") with prejudice under Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. This Motion is based on this Notice of Motion and Motion, the supporting Memorandum of Points and Authorities, the Declaration of Michael Li-Ming Wong ("Wong Decl."), the Request for Judicial Notice, the Court's files in this action, the arguments of counsel, and any other matter that the Court may properly consider.

**TABLE OF CONTENTS**

**Page**

INTRODUCTION ........................................................................................................ 1

ISSUES TO BE DECIDED ........................................................................................ 2

BACKGROUND ......................................................................................................... 3

      A.    Uber ................................................................................................... 3

      B.    The Incident ....................................................................................... 3

      C.    The Amended Complaint ................................................................... 4

ARGUMENT ............................................................................................................... 5

I.    The Court Should Dismiss the Amended Complaint Pursuant to Rule 12(b)(1) Because Plaintiff Lacks Article III Standing to Pursue His Claims........................... 5

      A.    Plaintiff Lacks Article III Standing Because He Fails to Plead Injury-in-Fact............. 6

      B.    Plaintiff Lacks Article III Standing Because He Fails to Plead Causation ................. 10

II.    The Court Should Dismiss the Amended Complaint Pursuant to Rule 12(b)(6) Because Plaintiff Lacks Standing under the California State Statutes Upon Which He Relies........................................................................................................ 11

      A.    Plaintiff Lacks Standing under the UCL Because He Has Not Pled Injury-in-Fact or Lost Money or Property ........................................ 12

      B.    Plaintiff Lacks Standing under Civil Code Sections 1798.81.5 and 1798.82 Because He Has Not Pled Harm or Injury ................................ 14

      C.    As an Admitted Oregon Resident, Plaintiff Cannot Enforce Civil Code Section 1798.82 ................................................................. 16

III.    The Court Should Dismiss the Amended Complaint Pursuant to Rule 12(b)(6) Because Plaintiff Fails to State a Claim under California's Unfair Competition Law ........... 17

      A.    Plaintiff Does Not Plausibly Allege That Uber Engaged in Any Unlawful Business Practice................................................................. 17

      B.    Plaintiff Does Not Plausibly Allege That Uber Engaged in Any Unfair Business Practice................................................................. 17

      C.    Plaintiff Does Not Plausibly Allege That Uber Engaged in Any Fraudulent Business Practice................................................................. 19

CONCLUSION ........................................................................................................... 19

Gibson, Dunn & Crutcher LLP

1

**TABLE OF AUTHORITIES**

2

**Page(s)**

3

**Cases**

4

*Adams v. Johnson,*
   355 F.3d 1179 (9th Cir. 2004) ................................................................................................. 12

5

*Ashcroft v. Iqbal,*
   556 U.S. 662 (2009) ....................................................................................................... 11, 12

6

*Avila v. Countrywide Home Loans,*
   No. C 10-05485 LHK, 2010 WL 5071714 (N.D. Cal. Dec. 7, 2010) .................................... 17

7

*Baba v. Hewlett-Packard Co.,*
   No. C 09-05946 RS, 2010 WL 2486353 (N.D. Cal. June 16, 2010) ..................................... 18

8

9

*Bell Atl. Corp. v. Twombly,*
   550 U.S. 544 (2007) ............................................................................................... 1, 11, 12

10

*Belton v. Comcast Cable Holdings, LLC,*
   151 Cal. App. 4th 1224 (2007) .............................................................................................. 18

11

12

*Birdsong v. Apple, Inc.,*
   590 F.3d 955 (9th Cir. 2009) .................................................................................................... 6

13

*Boorstein v. CBS Interactive, Inc.,*
   222 Cal. App. 4th 456 (2013) ................................................................................................ 15

14

*Boorstein v. Men's Journal LLC,*
   No. 12-cv-771-DSF, 2012 WL 2152815 (C.D. Cal. June 14, 2012) ...................................... 15

15

*Buena Vista, LLC v. New Res. Bank,*
   No. C 10-1502 CW, 2010 WL 3448561 (N.D. Cal. Aug. 31, 2010) ...................................... 18

16

17

*Burton v. MAPCO Express, Inc.,*
   47 F. Supp. 3d 1279 (N.D. Ala. 2014) ................................................................................... 10

18

*Campbell v. Facebook Inc.,*
   No. C 13-5996 PJH, 2014 U.S. Dist. LEXIS 177331 (N.D. Cal. Dec. 23, 2014) ................... 13

19

*Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.,*
   20 Cal. 4th 163 (1999) ........................................................................................................... 18

20

*Choe v. INS,*
   11 F.3d 925 (9th Cir. 1993) ................................................................................................... 10

21

22

*Clapper v. Amnesty Int'l USA,*
   133 S. Ct. 1138 (2013) ........................................................................................................ 6, 7

23

*Claridge v. RockYou, Inc.,*
   785 F. Supp. 2d 855 (N.D. Cal. 2011) ................................................................................... 14

24

*Connecticut Nat'l Bank v. Germain,*
   503 U.S. 249 (1992) ............................................................................................................... 17

25

*Edwards v. First Am. Corp.,*
   610 F.3d 514 (9th Cir. 2010) ................................................................................................. 15

26

*Fulfillment Servs. Inc. v. United Parcel Serv., Inc.,*
   528 F.3d 614 (9th Cir. 2008) ................................................................................................. 15

27

28

*Green v. eBay Inc.,*
   No. CIV.A. 14-1688, 2015 WL 2066531 (E.D. La. May 4, 2015) ...................................... 8, 9

*In re Barnes & Noble Pin Pad Litig.,*
No. 12-cv-8617, 2013 WL 4759588 (N.D. Ill. Sept. 3, 2013) ......................... 7, 8, 16

*In re Facebook Privacy Litig.,*
No. 12-15619, 2014 WL 1815489 (9th Cir. May 8, 2014) ................................ 13

*In re Horizon Healthcare Servs., Inc. Data Breach Litig.,*
No. CIV.A. 13-7418 CCC, 2015 WL 1472483 (D.N.J. Mar. 31, 2015) ........................ 10

*In re iPhone 4S Consumer Litig.,*
No. C 12-1127 CW, 2013 WL 3829653 (N.D. Cal. July 23, 2013) ................................ 3

*In re iPhone Application Litig.,*
No. 11-MD-02250 LHK, 2011 WL 4403963 (N.D. Cal. Sept. 20, 2011) ........................ 13

*In re Sci. Applications Int'l Corp. (SAIC) Backup Tape Data Theft Litig.,*
45 F. Supp. 3d 14 (D.D.C. 2014) ................................ 10

*In re Stac Elecs. Sec. Litig.,*
89 F.3d 1399 (9th Cir. 1996) ................................ 3

*In re Tobacco II Cases,*
46 Cal. 4th 298 (2009) ................................ 19

*In re Zappos.com, Inc., Customer Data Sec. Breach Litig.,*
No. 12-cv-00325-RCJ, 2015 WL 3466943 (D. Nev. June 1, 2015) ........................ 7

*Kwikset Corp. v. Super. Ct.,*
51 Cal. 4th 310 (2011) ................................ 12

*Levitt v. Yelp! Inc.,*
No. C 10-1321 MHP, 2011 U.S. Dist. LEXIS 99372 (N.D. Cal. Mar. 22, 2011) ........................ 18

*Lewert v. P.F. Chang's China Bistro, Inc.,*
No. 14-cv-4787, 2014 WL 7005097 (N.D. Ill. Dec. 10, 2014) ........................ 6

*Lewis v. Casey,*
518 U.S. 343 (1996) ................................ 5

*Lujan v. Defenders of Wildlife,*
504 U.S. 555 (1992) ................................ 5, 10

*Maya v. Centex Corp.,*
658 F. 3d 1060 (9th Cir. 2011) ................................ 12

*McDonald v. Coldwell Banker,*
543 F.3d 498 (9th Cir. 2008) ................................ 18

*Miller v. Hearst Communications, Inc.,*
No. 12-cv-0733-GHK, 2012 WL 3205241 (C.D. Cal. August 3, 2012) ........................ 15

*Mitan v. Feeney,*
497 F. Supp. 2d 1113 (C.D. Cal. 2007) ................................ 12

*Murray v. Time Inc.,*
No. C 12-00431 JSW, 2012 WL 3634387 (N.D. Cal. Aug. 24, 2012) ........................ 15

*O'Shea v. Littleton,*
414 U.S. 488 (1974) ................................ 5, 9

*Opperman v. Path, Inc.,*
No. C 13-00453 JST, 2014 WL 1973378 (N.D. Cal. May 14, 2014) ........................ 13

*Peters v. St. Joseph Servs. Corp.,*
No. 4:14-cv-2872, 2015 WL 589561 (S.D. Tex. Feb. 11, 2015) ........................ 8, 10

iii

*Remijas v. Neiman Marcus Grp., LLC*,
   No. 14-cv-1735, 2014 WL 4627893 (N.D. Ill. Sept. 16, 2014) ......................................... 6

*Sisseton-Wahpeton Sioux Tribe v. United States*,
   90 F.3d 351 (9th Cir. 1996).................................................................................................. 19

*Smith & Hawken, Ltd. v. Gardendance, Inc.*,
   No. C 04-1664 SBA, 2004 WL 2496163 (N.D. Cal. Nov. 5, 2004)................................. 18

*Strautins v. Trustwave Holdings, Inc.*,
   27 F. Supp. 3d 871 (N.D. Ill. 2014) .................................................................................. 8, 9

*Sybersound Records, Inc. v. UAV Corp.*,
   517 F.3d 1137 (9th Cir. 2008).............................................................................................. 17

*Thompson v. Home Depot, Inc.*,
   No. 07-cv-1058-IEG, 2007 WL 2746603 (S.D. Cal. Sept. 18, 2007)............................... 13

*Uber Technologies, Inc. v. John Doe I*,
   Case No. 3:15-cv-00908-LB (N.D. Cal) ........................................................................... 1, 4

*United States v. Ritchie*,
   342 F.3d 903 (9th Cir. 2003)................................................................................................. 11

*Vess v. Ciba-Geigy Corp. USA*,
   317 F.3d 1097 (9th Cir. 2003)............................................................................................... 19

*Vill. of Arlington Heights v. Metro. Housing Dev. Corp.*,
   429 U.S. 252 (1977) .............................................................................................................. 11

*White v. Lee*,
   227 F.3d 1214 (9th Cir. 2000)................................................................................................. 5

*Whitmore v. Arkansas*,
   495 U.S. 149 (1990)............................................................................................................ 5, 6

**Statutes**

Cal. Bus. & Prof. Code § 17200 .............................................................................................. 17

Cal. Bus. & Prof. Code § 17204 .............................................................................................. 12

Cal. Civ. Code § 1798.81 ......................................................................................................... 16

Cal. Civ. Code § 1798.81.5 ................................................................................................. passim

Cal. Civ. Code § 1798.81.5(b) ................................................................................................. 14

Cal. Civ. Code § 1798.82 ................................................................................................... passim

Cal. Civ. Code § 1798.83 ......................................................................................................... 15

Cal. Civ. Code § 1798.84 ......................................................................................................... 15

Cal. Civ. Code § 1798.84(b) .................................................................................................... 15

**Other Authorities**

Sen. Com. on Privacy, Analysis of AB 700, 2001-2002 Regular Session (August 21, 2002) ........... 16

**Rules**

FED. R. CIV. P. 12(B)(1).............................................................................................................. 5

Fed. R. Civ. P. 12(B)(6)............................................................................................................ 17

FED. R. EVID. 201 ..................................................................................................................... 11

Gibson, Dunn &
Crutcher LLP

## MEMORANDUM OF POINTS AND AUTHORITIES

## INTRODUCTION

Plaintiff Sasha Antman ("Plaintiff") has filed a purported class action lawsuit alleging violations of California law in connection with a data breach incident, but fails to allege any cognizable injury or harm.  Accordingly, Plaintiff lacks standing to sue, and the Court should dismiss this lawsuit.

In May 2014, an unknown "John Doe" used an illicitly obtained security key to download Uber database files containing confidential and proprietary information from Uber's protected computers, namely, the names and driver's license numbers of a limited number of Uber partner-drivers.[1]  Uber responded by identifying all of the drivers whose information was contained in those internal database files; notifying those individuals about the unauthorized third party's download of those files; and offering those individuals free credit monitoring for one year.  Uber also filed a "John Doe" lawsuit to discover the identity of the third party who unlawfully accessed Uber's database. *Uber Technologies, Inc. v. John Doe I*, Case No. 3:15-cv-00908-LB (N.D. Cal.).

Plaintiff, an Oregon resident and one of the partner-drivers whom Uber notified concerning the incident, has filed a purported class action lawsuit in federal court, alleging violations of California state law.  Plaintiff's Amended Complaint is fatally defective because it fails to allege any facts showing the type of harm required by law to bring this lawsuit.  Thus, the Court should dismiss the Amended Complaint on one of the following grounds, any one of which constitutes an independent and adequate basis for dismissal.

*First,* Plaintiff lacks standing under Article III of the Constitution because Plaintiff has suffered no concrete, non-speculative injury-in-fact.  Plaintiff attempts to plead around this fatal defect by alleging (i) that "an unknown and unauthorized person used his Private Information to apply for a credit card with Capital One, which now appears on Plaintiff's credit report," and (ii) a speculative fear that he faces an increased risk of identity theft.  (Am. Compl. ¶¶ 18, 33.)  Under

---

[1]  The alleged facts as stated in the Amended Complaint are taken as true only for the purpose of this motion.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  However, the Court need not credit legal conclusions stated as facts.  *See id.* at 556 (we "are not bound to accept as true a legal conclusion couched as a factual allegation" (internal quotation marks omitted)).

Gibson, Dunn & Crutcher LLP

recent U.S. Supreme Court authority, however, these vague and speculative claims of "harm" cannot support Plaintiff's claims as a matter of law. The Court may, and should, end its analysis there. Plaintiff lacks Article III standing and the Amended Complaint should be dismissed.

*Second*, even if Plaintiff's amorphous assertions of "harm" constituted injury-in-fact, Plaintiff has not pled (nor could he plead) any plausible link (*i.e.,* "traceability") between the downloading of his information and his purported harm. Nowhere does Plaintiff attempt to describe how an identity thief could use a simple name and driver's license number, without more, to apply for a credit card or commit any of the other potential frauds listed in the Amended Complaint. (*Id*. ¶¶ 29-33.) Moreover, judicially noticeable facts establish that the Capital One credit application of which Plaintiff complains could not have been completed without a Social Security number, a fact that conclusively establishes that Plaintiff's purported harm could not emanate from the data breach. Plaintiff lacks Article III standing for this reason as well.

*Third,* Plaintiff lacks statutory standing to bring claims under the UCL and Civil Code Sections 1798.81.5 and 1798.82 because he has failed to plead a concrete harm or injury, as required by those statutes. Plaintiff's UCL claim fails for the additional reason that he has not pled any "lost money or property," a requirement under that statute since 2004. Additionally (and separately), as a non-California resident, Plaintiff lacks standing to sue Uber for alleged violations of these California laws, which only apply to California residents.

*Finally,* even if Plaintiff had standing under Article III and these statutes, his Amended Complaint fails to plead any "unlawful, unfair or fraudulent" conduct, and his UCL claim fails on this additional basis.

### ISSUES TO BE DECIDED

1. Does Plaintiff have standing under Article III of the United States Constitution?

2. Does Plaintiff have statutory standing under California's Unfair Competition Law ("UCL") and Civil Code Sections 1798.81.5 and 1798.82?

3. Does Plaintiff state a claim under the UCL?

Gibson, Dunn & Crutcher LLP

# BACKGROUND

### A.  Uber

Uber is a technology company that has developed a cutting-edge smartphone application that connects drivers and riders in cities all over the world.  (Am. Compl. ¶ 9.)  As of December 2014, Uber offered its pioneering technology platform to riders and drivers in 53 countries and more than 200 cities worldwide.  *Id.*  Despite having recently marked only its fifth anniversary, Uber licenses its smartphone application to thousands of partner-drivers to fulfill requests for transportation services around the globe.

### B.  The Incident

In May 2014, John Doe used an illicitly obtained unique security key to download Uber database files containing confidential and proprietary information from Uber's protected computers.  (Am. Compl. ¶¶ 8, 10-11 (citing Uber Press Release, Feb. 27, 2015, *available at* http://blog.uber.com/2-27-15) (Wong Decl. Ex. A) (hereinafter "Press Release").)[2]  The accessed files "contained only the name and driver's license number of some driver partners."  (Press Release.)  This incident did not involve, nor does Plaintiff allege, any disclosure of Social Security numbers, credit or debit card numbers, bank account information, email addresses, passwords, physical addresses, or phone numbers.  (Am. Compl. ¶ 8; Press Release.)  In short, the incident did not involve disclosure of the type of information that a fraudster could potentially use to apply for a credit card in someone else's name, or to steal someone else's identity.

Uber first learned that its database "could potentially have been accessed" by an unauthorized third party in September 2014.  (Press Release.)  After discovering this possibility, Uber immediately changed the access protocols for its internal database, began investigating the scope and nature of the incident, and contacted law enforcement.  (Am. Compl. ¶¶ 11-14 (citing Press Release).)  After an

---

[2]  The Court may consider Uber's press release because its contents are alleged in the Amended Complaint.  *See, e.g.*, *In re Stac Elecs. Sec. Litig.*, 89 F.3d 1399, 1405 n.4 (9th Cir. 1996) ("[D]ocuments whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered in ruling on a Rule 12(b)(6) motion to dismiss.") (citation and quotation marks omitted); *In re iPhone 4S Consumer Litig.*, No. C 12-1127 CW, 2013 WL 3829653, at *6 (N.D. Cal. July 23, 2013) (holding the Court may take judicial notice of "webpages or documents . . . specifically referred to in the [complaint]").

Gibson, Dunn & Crutcher LLP

extensive investigation, Uber determined that there had been a one-time access of the Uber database by an unauthorized third party, that the unauthorized access had impacted only a small percentage of drivers using the Uber app, that the accessed files "contained only the name and driver's license numbers of some driver partners," and that there was no evidence that any of the data had been misused.  (Press Release.)

Uber issued the above-mentioned press release in February 2015.  *See* Civ. Code § 1798.82 (permitting a reasonable delay in disclosing a data breach in light of "the legitimate needs of law enforcement" and "any measures necessary to determine the scope of the breach and restore the reasonable integrity of the data system").  This press release notified drivers using the Uber app about the incident and offered affected drivers a free one-year subscription to Experian's ProtectMyID Alert credit-monitoring service.  (Press Release.)  Plaintiff has not pled that he took advantage of this offer.

Uber also filed with this Court a "John Doe" complaint to discover the identity of the third party who unlawfully accessed Uber's database.  *See id.*; *Uber Technologies, Inc. v. John Doe I*, Case No. 3:15-cv-00908-LB (N.D. Cal.).

### C.     The Amended Complaint

On March 12, 2015, Plaintiff, a resident of Oregon and a former driver-partner of Uber who stopped using the Uber app to offer rides in October 2013, filed a putative class action complaint against Uber.  (Dkt. 1.)  Plaintiff seeks to represent all persons residing in the United States whose personal information was disclosed in the data breach affecting Uber, as well as a subclass of such persons residing in California.  (Am. Compl. ¶¶ 35-36.)  On March 16, 2015, Plaintiff amended his Complaint.  (Dkt. 7.)  The Amended Complaint asserts causes of action under California Civil Code Sections 1798.81.5 and 1798.82 and California's Unfair Competition Law, claiming that Uber failed to adequately safeguard "names, drivers license numbers," and other unspecified "personal information" from illicit access, and failed to timely notify the impacted drivers.  (Am. Compl. ¶ 8.)  Plaintiff does not specify what "other personal information" the Amended Complaint's vague assertion refers to, nor does he provide any factual support for this barebones allegation (nor could he consistent with Rule 11).  (*Id.*)

The Amended Complaint further asserts that "around June 2, 2014, an unknown and unauthorized person used Plaintiff's Private Information to apply for a credit card with Capital One, which now appears on Plaintiff's credit report."  (Am. Compl. ¶ 19.)  This alleged incident is Plaintiff's sole allegation of actual "misuse" of his information.  Plaintiff's other allegations of "harm" emanate from a belief that he and the proposed class "now face years of constant surveillance of their financial and personal records, monitoring and loss of rights."  (Am. Compl. ¶¶ 19, 32–33.)

ARGUMENT

**I.    THE COURT SHOULD DISMISS THE AMENDED COMPLAINT PURSUANT TO RULE 12(b)(1) BECAUSE PLAINTIFF LACKS ARTICLE III STANDING TO PURSUE HIS CLAIMS**

A challenge to standing under Article III "pertain[s] to a federal court's subject-matter jurisdiction" and is therefore "properly raised in a motion under Federal Rule of Civil Procedure 12(b)(1)."  *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000).  To plead standing, a plaintiff must "clearly and specifically set forth facts sufficient to satisfy [the] Article III standing requirements."  *Whitmore v. Arkansas*, 495 U.S. 149, 155-56 (1990).  Specifically, Article III requires that Plaintiff plead and be prepared to prove (1) injury-in-fact; (2) a causal connection between the injury and the conduct complained of; and (3) substantial likelihood that the requested relief will remedy the alleged injury in fact.  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992).  The Supreme Court has "emphasized repeatedly" that the alleged injury "must be concrete in both a qualitative and temporal sense.  The complainant must allege an injury to himself that is distinct and palpable, as opposed to merely abstract, and the alleged harm must be actual or imminent, not conjectural or hypothetical."  *Whitmore*, 495 U.S. at 155 (internal citations and quotations omitted).

Where, as here, a plaintiff purports to represent a class, the plaintiff must establish that he or she personally has standing to bring the claims alleged in the suit.  *O'Shea v. Littleton*, 414 U.S. 488, 494 (1974) ("[I]f none of the named plaintiffs purporting to represent a class establishes the requisite of a case or controversy with the defendants, none may seek relief on behalf of himself or any other member of the class."); *Lewis v. Casey*, 518 U.S. 343, 357 (1996) ("[N]amed plaintiffs who represent a class 'must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to

represent.'") (citations omitted); *Birdsong v. Apple, Inc.*, 590 F.3d 955, 960 (9th Cir. 2009) (affirming dismissal of putative class action brought by iPod users for lack of standing where "[t]he risk of injury the plaintiffs allege is not concrete and particularized as to themselves").

### A.        Plaintiff Lacks Article III Standing Because He Fails to Plead Injury-in-Fact

In *Clapper v. Amnesty Int'l USA*, 133 S. Ct. 1138 (2013), the U.S. Supreme Court made clear that speculative allegations of harm cannot satisfy Article III's injury-in-fact requirement. "[T]hreatened injury must be certainly impending," and plaintiffs cannot manufacture standing "merely by inflicting harm on themselves based on their fears of hypothetical future harm." *Id.* at 1148, 1151.

Here, the Amended Complaint only pleads speculative injuries, which fail to meet the threshold requirements of Article III standing under *Clapper* and other binding cases.  Plaintiff's only purported "harm" based on actual alleged "misuse" of his data is that "[o]n or around June 2, 2014, an unknown and unauthorized person used Plaintiff's Private Information to apply for a credit card with Capital One, which now appears on Plaintiff's credit report." (Am. Compl. ¶ 19.)  It is unclear whether Plaintiff contends that an *application for* a Capital One credit card appears on his credit report or instead that an actual Capital One credit account appears on his credit report.  Irrespective of how the Court construes this vague allegation, the mere existence of an application for a credit card or open credit card account does not constitute a concrete, particularized, or distinct and palpable injury.  *See Whitmore*, 495 U.S. at 155; *Clapper*, 133 S. Ct. at 1147.  Plaintiff does not allege, for instance, that someone actually incurred charges on a credit card in his name, and that his credit card company refused to reimburse any such charges (had they occurred).  *See, e.g., Lewert v. P.F. Chang's China Bistro, Inc.*, No. 14-cv-4787, 2014 WL 7005097, at *3 (N.D. Ill. Dec. 10, 2014) ("The affidavit itself states that the charges were either declined or attempted.  There are no claims that Kosner actually had any monetary damage from these charges . . . In order to have suffered an actual injury, Plaintiffs must have had an unreimbursed charge on their credit or debit cards . . . Plaintiffs have not alleged an injury in fact with respect to fraudulent charges."); *Remijas v. Neiman Marcus Grp., LLC*, No. 14-cv-1735, 2014 WL 4627893, at *3 (N.D. Ill. Sept. 16, 2014) ("Plaintiffs have not alleged that any of the fraudulent charges were unreimbursed.  On these pleadings, I am not persuaded that unauthorized

credit card charges for which none of the plaintiffs are financially responsible qualify as 'concrete' injuries."). Similarly, Plaintiff does not allege that his credit score was affected at all (much less in a materially harmful way) as a result of this unspecified Capital One entry "appear[ing] on [his] credit report."[3] Nor does Plaintiff assert that he was required to spend any significant time or money removing any fraudulent charges made in his name.[4] While such allegations, on their own, would still be inadequate to constitute injury-in-fact, their absence here underscores Plaintiff's complete lack of tangible harm.

Plaintiff's allegations based on a threat of future harm are even more speculative. Citing to documents having nothing to do with the allegations in this specific case, Plaintiff paints a dire picture, with assertions that "Class members' identifying information[] is 'as good as gold' to identity thieves," and that "[i]dentity thieves can use personal information such as that of Class members . . . to perpetrate a variety of crimes that harm victims," such as "drain[ing] your bank account, run[ning] up your credit cards, open[ing] new utility accounts or get[ting] medical treatment on your health insurance." (Am. Compl. ¶¶ 27-29.) Yet Plaintiff's broad and generic claims of potential dangers are premised on the use of personal identifying information that Plaintiff does not (and cannot in good faith) allege that John Doe accessed, such as a person's "credit card number, [and] credit card expiration dates." (*Id.* ¶ 29.) In fact, the FTC Interactive Toolkit upon which the Amended Complaint relies for its assertion that putative class members' identifying information is "as good as

---

[3] Although the Amended Complaint generally alleges "damage to Plaintiff's and Class members' credit reports and/or scores," nowhere does Plaintiff plead this fact with any specificity or plausibility. (Am. Compl. ¶ 33.)

[4] The Amended Complaint similarly alleges entirely generic "expenses" and "time . . . incurred" by putative class members to remedy or mitigate the supposed effects of the data breach. (Am. Compl. ¶ 33.) There is no allegation that Plaintiff actually incurred such expenses, but even if he had, *Clapper* holds that plaintiffs "cannot manufacture standing merely by inflicting harm on themselves based on their fears of hypothetical future harm that is not certainly impending." *Clapper*, 133 S. Ct. at 1151; *see also In re Zappos.com, Inc., Customer Data Sec. Breach Litig.*, No. 12-cv-00325-RCJ, 2015 WL 3466943, at *10 (D. Nev. June 1, 2015) ("[I]ncurring costs to mitigate th[e] threat [of future theft or fraud] cannot serve as the basis for this action."); *In re Barnes & Noble Pin Pad Litig.*, No. 12-cv-8617, 2013 WL 4759588, at *4 (N.D. Ill. Sept. 3, 2013) ("The Complaint alleges Plaintiffs incurred expenses in order to mitigate an increased risk of identity theft or fraud, but it does not allege what those expenses are with any specificity. Even if specific expenses had been alleged, such expenses would not qualify as actual injuries under *Clapper*. Plaintiffs 'cannot manufacture standing by incurring costs in anticipation of non-imminent harm.'") (internal citations omitted).

---

7

gold" specifically states that "[f]or identity thieves, your name and *Social Security number, credit card numbers, or other financial account information* is as good as gold."  (*Id.* ¶ 27 (citing FTC Interactive Toolkit at 3) (emphasis added).)  Plaintiff does not allege that John Doe accessed any of this "good as gold" information in this case.  And it is implausible, if not impossible, that identity thieves may commit "immigration fraud," "fil[e] a fraudulent tax return," "get medical services," "obtai[n] a job, procur[e] housing, or even giv[e] false information to the police during an arrest," using only an individual's name and driver's license number (which was the only information potentially compromised in the alleged data breach).  (Am. Compl. ¶¶ 29-30.)  Moreover, Plaintiff does not assert that any of these events has occurred.  Plaintiff's speculative future injuries do not constitute injury-in-fact as a matter of law.

In the wake of *Clapper,* most federal courts have dismissed "threat of future harm" data-breach claims like Plaintiff's, holding that such threats are not "certainly impending," even where hackers accessed sensitive personal data such as credit card and Social Security information.  *See, e.g., Zappos*, 2015 WL 3466943, at *11 (dismissing for lack of standing because allegations of increased threat of future harm from disclosure of personal information – which included names, account numbers, passwords, email addresses, billing and shipping addresses, and phone numbers – were insufficient to confer standing); *Green v. eBay Inc.*, No. CIV.A. 14-1688, 2015 WL 2066531, at *3 (E.D. La. May 4, 2015) (finding no injury from threat of future harm stemming from disclosure of names, passwords, birthdates, email and physical addresses); *Peters v. St. Joseph Servs. Corp.*, No.14-cv-2872, 2015 WL 589561, at *5 (S.D. Tex. Feb. 11, 2015) (finding alleged future harm "speculative – even hypothetical – but certainly not imminent" where disclosed information included names, social security numbers, birthdates, addresses, medical records, and bank account information, and where there was a declined illicit purchase attempt on the plaintiff's credit card); *Strautins v. Trustwave Holdings, Inc.*, 27 F. Supp. 3d 871, 872 (N.D. Ill. 2014) (claims of injury "too speculative" where hacker infiltrated South Carolina Department of Revenue and obtained millions of Social Security numbers, and hundreds of thousands of credit and debit card numbers and tax records); *Barnes & Noble,* 2013 WL 4759588, at *3 (finding improper disclosure of personal information, including credit and debit card information, untimely notification of breach, loss of

privacy, time and expenses to mitigate identity theft risk, and single fraudulent charge on credit card insufficient to establish cognizable injury).  As the *Zappos* court observed: "Immediacy is a common theme found in cases that discuss standing based on an alleged future harm. . . .  It is not enough that a credible threat may occur at some point in the future; rather, the threat must be impending. . . .  It therefore follows that even if a plaintiff faces a real threat, she has no standing until that threat is immediate."  *Zappos*, 2015 WL 3466943, at *6.

Here, Plaintiff has not alleged that any sensitive personal information was stolen, or that this was a sophisticated, well-planned attack aimed at accessing and misappropriating drivers' sensitive personal data.  Plaintiff has only alleged, at best, that his name and driver's license number may have been disclosed to an unknown third party, which simply provides no basis for claiming a tangible injury.  Further, in what amounts to a laundry list of hypothetical and generic harms, Plaintiff asserts an unspecified injury "from the theft of his private information"; the misuse of his private information "such as the unauthorized attempt to open a credit card account"; unnamed "damage to Plaintiff's and Class members' credit reports and/or scores"; unknown injury from the "untimely and inadequate notification of the Data Breach"; "loss of privacy"; the purported expense and time incurred to remedy or mitigate the effects of the data breach; and "deprivation of rights" under California law.  (Am. Compl. ¶ 33.)  But these claims are entirely abstract, and Plaintiff has "failed to show how th[ese] loss[es] amoun[t] to a concrete and particularized injury."  *Zappos*, 2015 WL 3466943, at *11 n.5; *see also eBay Inc.*, 2015 WL 2066531, at *3 (finding no standing where plaintiffs claimed "economic damages . . . improper disclosures of their personal information . . . out-of-pocket expenses [and] value of their time spent mitigating identity theft and/or identity fraud . . . [and] increased risk of identity theft and/or identity fraud."); *Strautins*, 27 F. Supp. 3d at 875 (same); *O'Shea*, 414 U.S. at 494 ("Abstract injury is not enough.  It must be alleged that the plaintiff 'has sustained or is immediately in danger of sustaining some direct injury' as the result of [the defendant's] conduct."); *Neiman Marcus Grp.*, 2014 WL 4627893, at *5 (increased risk of future harm, time and money spent to mitigate risk of future fraud and identity theft, and loss of control over and value of personal information insufficient to establish standing).

1    Accordingly, Plaintiff lacks standing under Article III because he fails to allege an injury-in-

2    fact.

3        **B.        Plaintiff Lacks Article III Standing Because He Fails to Plead Causation**

4        Even if Plaintiff's vague allegations of harm could constitute the required injury-in-fact

5    (which they cannot), Plaintiff has not plausibly alleged any relationship between his alleged "harm"

6    and the Uber data breach.  Article III requires "a causal connection between the injury and the

7    conduct complained of—the injury has to be 'fairly . . . trace[able] to the challenged action of the

8    defendant, and not . . . th[e] result [of] the independent action of some third party not before the

9    court.'" *Lujan,* 504 U.S. at 560.  The Amended Complaint assumes that it is enough to merely allege

10   the appearance of a Capital One credit card account or application on his credit report sometime

11   following the Uber data breach.  (Am. Compl. ¶ 19.)  Justly, the law requires more; purely temporal

12   connections are not enough.  *See, Choe v. INS*, 11 F.3d 925, 938 (9th Cir. 1993) (refusing to apply

13   the "familiar logical fallacy" of *post hoc ergo procter hoc* (literally "after this, therefore because of

14   this")); *In re Horizon Healthcare Servs., Inc. Data Breach Litig.*, No. CIV.A. 13-7418 CCC, 2015

15   WL 1472483, at *7 (D.N.J. Mar. 31, 2015) (finding plaintiff could not "plausibly demonstrate a

16   causal connection adequate for standing" between data breach and fraudulent tax return filed on

17   behalf of plaintiff and his wife, since stolen laptop did not contain personal information about

18   plaintiff's wife and no other plaintiffs alleged identity theft); *St. Joseph Servs. Corp.*, 2015 WL

19   589561, at *5 (dismissing for lack of standing and noting that it could be "impossible to determine

20   whether the misused information was obtained from exposure caused by the Data Breach"); *In re Sci.

21   Applications Int'l Corp. (SAIC) Backup Tape Data Theft Litig.*, 45 F. Supp. 3d 14, 30-31 (D.D.C.

22   2014) (finding plaintiffs who alleged unauthorized charges on credit or debit cards but did not allege

23   that any financial data was contained on stolen tapes lacked Article III standing because they "proffer

24   no plausible explanation for how the thief would have acquired their banking information" and thus

25   failed to establish causal connection between injury and conduct complained of); *Burton v. MAPCO

26   Express, Inc.*, 47 F. Supp. 3d 1279, 1284-85 (N.D. Ala. 2014) (plaintiff could not "press forward

27   unless he plausibly alleges not only that fraudulent charges appeared on his debit account as a

28   consequence of the MAPCO data breach but also that he incurred damages as a result").

1    Instead, in order to meet the traceability requirement, Plaintiff must specifically allege facts

2    demonstrating "that the injury is indeed fairly traceable to the defendant's acts or omissions."  *See*

3    *Vill. of Arlington Heights v. Metro. Housing Dev. Corp.*, 429 U.S. 252, 261 (1977).  Plaintiff does

4    not even attempt to allege facts that link the application for a Capital One credit card appearing on

5    his credit report to Uber's alleged acts or omissions.  Furthermore, any such allegation would be

6    implausible because the only information exposed in the breach was names and drivers' license

7    numbers (and Plaintiff does not, and cannot, demonstrate that any "other personal information" was

8    accessed).  (Am. Compl. ¶ 8.)  It is implausible that someone could apply for a credit card with this

9    information alone.  Indeed, a sample Capital One credit card application clearly shows that a name

10   and driver's license number are neither necessary nor sufficient to apply for a Capital One credit card.

11   (Wong Decl. Ex. B.)  Since the Amended Complaint depends significantly on the alleged appearance

12   of a Capital One credit card and/or credit card application on Plaintiff's credit report (*see* Am.

13   Compl. ¶ 19), the Court may treat such an application as a part of the Amended Complaint, and

14   "assume that its contents are true for purposes of a motion to dismiss."  *United States v. Ritchie*, 342

15   F.3d 903, 908 (9th Cir. 2003).  This Court may thus take judicial notice of the Capital One credit card

16   application.  *See* Fed. R. Evid. 201.

17        The Amended Complaint's vague and inadequate threats of future harm suffer from the same

18   flaw.  Plaintiff does not plead any facts that would establish causation by linking driver's license

19   numbers and names to any increased future risk of identity theft.

20        Because Plaintiff has not plausibly alleged that his purported harms are fairly traceable to the

21   conduct of Uber (as opposed to other, completely unrelated events), he lacks Article III standing on

22   this additional basis.

23   **II.    THE COURT SHOULD DISMISS THE AMENDED COMPLAINT PURSUANT TO RULE 12(b)(6)
         BECAUSE PLAINTIFF LACKS STANDING UNDER THE CALIFORNIA STATE STATUTES UPON
24       WHICH HE RELIES**

25   To survive a motion to dismiss for failure to state a claim under Rule 12(b)(6), a complaint must state

26   "enough facts to state a claim to relief that is plausible on its face."  *Twombly*, 550 U.S. at 570; *see*

27   *also Ashcroft v. Iqbal*, 556 U.S. 662 (2009).  As the Supreme Court has held, "a plaintiff's

28   obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and

conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citations omitted).  Rather, the complaint must allege a factual basis for each element of a cause of action entitling a plaintiff to relief.  *See Iqbal*, 556 U.S. at 678-79, 687 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. . . . While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations"; holding plaintiff failed to plead sufficient facts to state a claim for purposeful and unlawful discrimination); *Adams v. Johnson,* 355 F.3d 1179, 1183 (9th Cir. 2004) ("conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss."); *Mitan v. Feeney*, 497 F. Supp. 2d 1113, 1126 (C.D. Cal. 2007) (dismissing complaint that merely recited elements of cause of action "using conclusory, boilerplate language").

Applying these standards here, the Court should dismiss the Amended Complaint, because even if Plaintiff's allegations of harm could somehow pass muster under Article III (which they cannot), Plaintiff lacks statutory standing under the UCL and California Civil Code Sections 1798.81.5 and 1798.82.  *See Maya v. Centex Corp.*, 658 F. 3d 1060, 1067 (9th Cir. 2011) (acknowledging that "lack of statutory standing requires dismissal for failure to state a claim").

### A.   Plaintiff Lacks Standing under the UCL Because He Has Not Pled Injury-in-Fact or Lost Money or Property

Under California's UCL, a private person has standing to bring a UCL action only if he or she "has suffered injury in fact *and* has lost money or property as a result of the unfair competition."  Cal. Bus. & Prof. Code § 17204 (emphasis added).  Plaintiff does not have standing under the UCL for the same reasons that he does not have Article III standing; indeed, the arguments apply with even greater force under the UCL's more narrow standing requirements.  *Kwikset Corp. v. Super. Ct.,* 51 Cal. 4th 310, 322-24 (2011) (the UCL's "narrower" standing requirements mandate showing "a loss or deprivation of money or property sufficient to qualify as injury in fact, i.e., *economic injury*").

Plaintiff has failed to plead that he personally has suffered any injury-in-fact, and he likewise has failed to plead any loss of money or property.  Instead, he bases his allegations of "injury in fact and lost money or property" on a series of hypothetical situations:

---

. . . identity thieves *may* get medical services using consumers' compromised personal information or commit any number of other frauds, such as obtaining a job, procuring housing, or even giving false information to police during an arrest.

There *may be* a time lag between when harm occurs versus when it is discovered, and also between when PII or PCD is stolen and when it is used . . .

Plaintiff and Class members now face years of constant surveillance of their financial and personal records, monitoring, and loss of rights. The Class is incurring and will continue to incur such damages in addition to any fraudulent credit and debit card charges incurred by them and the resulting loss of use of their credit and access to funds, whether or not such charges are ultimately reimbursed by the credit card companies.

(Am. Compl. ¶¶ 30-32, 72 (emphasis added).)

Such generic and speculative assertions are inadequate to support a UCL claim.  The law is settled in the Ninth Circuit that the loss (or loss of value) of "personal information" does not constitute lost money or property under the UCL.  *See In re Facebook Privacy Litig.*, No. 12-15619, 2014 WL 1815489, at *1 (9th Cir. May 8, 2014) (affirming dismissal of plaintiffs' UCL claim because plaintiffs failed to allege that they lost money or property, even where plaintiffs alleged the dissemination of personal information and the lost sales value of that information); *see also Campbell v. Facebook Inc.*, No. C 13-5996 PJH, 2014 U.S. Dist. LEXIS 177331, at *34-35 (N.D. Cal. Dec. 23, 2014) (dismissing UCL claim with prejudice and noting that "courts have consistently rejected . . . a broad interpretation of 'money or property'" that would include "a property interest in [plaintiffs'] personal information"); *Opperman v. Path, Inc.*, No. C 13-00453 JST, 2014 WL 1973378, at *24 (N.D. Cal. May 14, 2014) (dismissing UCL claim premised on defendant app developers' alleged appropriation of plaintiffs' personal contact lists from their mobile devices, as plaintiffs "failed" to show they "lost money or property"); *In re iPhone Application Litig.*, No. 11-MD-02250 LHK, 2011 WL 4403963, at *14 (N.D. Cal. Sept. 20, 2011) (granting motion to dismiss UCL claim for unauthorized access to personal information for lack of standing, and noting that "[n]umerous courts have held that a plaintiff's 'personal information' does not constitute money or property under the UCL"); *Thompson v. Home Depot, Inc.*, No. 07-cv-1058-IEG, 2007 WL 2746603, at *3 (S.D. Cal. Sept. 18, 2007) (Plaintiff's "argument . . . that his personal information constitutes property under the UCL, is similarly unpersuasive and also rejected.").

Applying the "heightened concept of injury under the UCL," then, Plaintiff's claim that the potential harms alleged in paragraphs 30 to 32 of the Amended Complaint somehow constitute "lost money" "strains the acceptable boundaries of 'injury' under the statute." *Claridge v. RockYou, Inc.*, 785 F. Supp. 2d 855, 862-63 (N.D. Cal. 2011) (rejecting the claim that a plaintiff's personally identifiable information ("PII") exposed as the result of a data breach constituted "lost money or property" under the UCL). Likewise, "to the extent that [P]laintiff makes the equally untested claim that his PII constitutes 'property,' [P]laintiff makes no allegation – nor can he – that his PII is 'lost' in the sense understood under the UCL." *Id.* Plaintiff's name and driver's license number "did not cease to belong to him, or pass beyond his control." *Id.*

Accordingly, Plaintiff lacks standing to bring a UCL claim. And while Plaintiff's UCL claim does fail for additional reasons (as discussed below), it is not necessary to "delve into an analysis of whether plaintiff has met the remaining substantive prongs of a UCL claim"; rather, the Court can "gran[t] defendant's motion to dismiss the plaintiff's UCL claim based on the injury requirement alone." *Claridge*, 785 F. Supp. 2d at 863.

## B.  Plaintiff Lacks Standing under Civil Code Sections 1798.81.5 and 1798.82 Because He Has Not Pled Harm or Injury

Plaintiff's claims under Sections 1798.81.5 and 1798.82 fail because he fails to allege an actual injury from the alleged violation of these sections, as required by the statute. The first provision requires that "[a] business that owns, licenses, or maintains personal information about a California resident . . . implement and maintain reasonable security procedures and practices appropriate to the nature of the information, to protect the personal information from unauthorized access, destruction, use, modification, or disclosure." Cal. Civ. Code § 1798.81.5(b). The second requires businesses to "disclose a breach of the security of the system following discovery or notification of the breach in the security of the data to a resident of California whose unencrypted personal information was, or is reasonably believed to have been, acquired by an unauthorized person. The disclosure shall be made in the most expedient time possible and without unreasonable delay, consistent with the legitimate needs of law enforcement, as provided in subdivision (c), or any measures necessary to determine the scope of the breach and restore the reasonable integrity of the

1    data system." Cal. Civ. Code § 1798.82. Finally, Section 1798.84, which enables private citizens to

2    bring a cause of action based on a violation of Sections 1798.81.5 or 1798.82, states that "[a]ny

3    *customer injured by a violation* of this title may institute a civil action to recover damages." Cal. Civ.

4    Code § 1798.84(b) (emphasis added).

5         The Ninth Circuit has recognized that, under particular circumstances, an injury may "exist

6    solely by virtue of 'statutes creating legal rights, the invasion of which creates standing.'" *Edwards*

7    *v. First Am. Corp.*, 610 F.3d 514, 517 (9th Cir. 2010) (quoting *Fulfillment Servs. Inc. v. United*

8    *Parcel Serv., Inc.*, 528 F.3d 614, 618-19 (9th Cir. 2008)). But where, as here, statutory language

9    explicitly limits private rights of action to those "injured by a violation," a plaintiff must allege an

10   actual injury proximately caused by a violation of the statute to have standing to pursue a claim under

11   that statute. And several courts in the Ninth Circuit have explicitly held that Section 1798.84, which

12   is the only basis for any private right of action arising from a violation of Section 1798.81.5 or

13   1798.82, indeed requires that the plaintiff be a "customer *injured by a violation* of this title" in order

14   to have standing under the statute. Cal. Civ. Code § 1798.84 (emphasis added); *see Boorstein v.*

15   *Men's Journal LLC*, No. 12-cv-771-DSF, 2012 WL 2152815, at *2-3 (C.D. Cal. June 14, 2012)

16   (holding that plaintiff who alleged violation of Section 1798.83, without pleading actual resulting

17   injury, lacked statutory standing because "§ 1798.84(b) expressly requires an injury resulting from a

18   violation. Thus, a violation of the statute, without more, is insufficient."); *Murray v. Time Inc.*, No. C

19   12-00431 JSW, 2012 WL 3634387, at *4-5 (N.D. Cal. Aug. 24, 2012) *aff'd*, 554 F. App'x 654 (9th

20   Cir. 2014) (same); *Miller v. Hearst Communications, Inc.*, No. 12-cv-0733-GHK, 2012 WL 3205241,

21   at *7 (C.D. Cal. August 3, 2012) (same); *see also Boorstein v. CBS Interactive, Inc.*, 222 Cal. App.

22   4th 456, 466-68 (2013) (same).

23        As it does with Section 1798.83, Section 1798.84 creates the only basis for a private right of

24   action for violation of Sections 1798.81.5 and 1798.82. Thus, Plaintiff's failure to allege a

25   cognizable injury resulting from Uber's alleged violation of Sections 1798.81.5 and 1798.82 is fatal

26   to his claims under these provisions. *See SAIC*, 2014 WL 1858458, at *11 (dismissing Section

27   1798.82 claim for lack of standing because "no one alleges any independent harm caused by the

28

1    delay”); *Barnes & Noble*, 2013 WL 4759588, at *4 (holding that, even if Barnes & Noble violated

2    Section 1798.82, plaintiffs lacked standing because they failed to allege actual injury).

3            Plaintiff does not allege any cognizable injury that would qualify him as a “customer injured

4    by a violation of” Section 1798.81.5 or Section 1798.82.  Instead, he vaguely asserts that “[a]s a

5    direct or proximate result of Defendant’s violations of Civil Code Sections 1798.81, 1798.81.5, and

6    1798.82, Plaintiff and Class members were (and continue to be) injured and have suffered (and will

7    continue to suffer) the damages described in this Class Action Complaint, including in Paragraphs

8    31-33.” (Am. Compl. ¶ 53.)  For the reasons detailed above in Section I.A., these allegations do not

9    rise to the level of an actual injury sufficient to establish statutory standing.  For instance, Plaintiff

10   fails to allege how Uber’s data protection protocols (which allegedly violated Section 1798.81.5)

11   and its particular manner of notifying Plaintiff of the breach (which supposedly violated Section

12   1798.82) actually injured him in a cognizable, redressable manner.  His failure to explain how any

13   defect in Uber’s data protection or notice methods tangibly harmed him, prevented him from

14   exercising his rights, or impaired his ability to protect himself from potential identity theft,

15   necessarily dooms his claim under Sections 1798.81.5 and 1798.82.

16           **C.      As an Admitted Oregon Resident, Plaintiff Cannot Enforce Civil Code Section
17                    1798.82**

18           Plaintiff’s claim under California Civil Code Section 1798.82 also fails because this statute

19   applies only to “California residents.”  Specifically, Civil Code Section 1798.82 requires businesses

20   to “disclose any breach of the security of the system following discovery or notification of the

21   breach in the security of the data *to any resident of California* whose unencrypted personal

22   information was, or is reasonably believed to have been, acquired by an unauthorized person.”

23   (Emphasis added).  The legislative history of the statute is also consistent with this conclusion, as it

24   clearly indicates that the statute is intended to apply only to individuals who reside in California *at*

25   *the time of the breach*.  *See* Sen. Com. on Privacy, Analysis of AB 700, 2001-2002 Regular Session

26   (August 21, 2002) at 3 (a business must disclose any breach of security of a system to California

27   residents, and that “[r]esidency would be determined by the most recent mailing address, telephone

28   number, or email address on file with the agency, person, or business.”) (Wong Decl. Ex. C).

Plaintiff does not allege that he was a California resident in September 2014 when Uber first learned of the breach (and began its investigation) or in February 2015 when notice was provided. On the contrary, Plaintiff alleges that he is a resident of Oregon.  For this separate and independent reason, Plaintiff lacks standing to bring a claim under Section 1798.82.  (Am. Compl. ¶ 1.)  *See also Connecticut Nat'l Bank v. Germain*, 503 U.S. 249, 253-54 (1992) ("We have stated time and again that courts must presume that a legislature says in a statute what it means and means in a statute what it says there.").

### III.   THE COURT SHOULD DISMISS THE AMENDED COMPLAINT PURSUANT TO RULE 12(b)(6) BECAUSE PLAINTIFF FAILS TO STATE A CLAIM UNDER CALIFORNIA'S UNFAIR COMPETITION LAW

The Court should likewise dismiss the Amended Complaint because Plaintiff fails to allege facts that could support a finding that the alleged conduct is "unlawful, unfair or fraudulent." Cal. Bus. & Prof. Code § 17200.

### A.   Plaintiff Does Not Plausibly Allege That Uber Engaged in Any Unlawful Business Practice

Plaintiff alleges that Uber's conduct is "unlawful" because it allegedly runs afoul of California Civil Code Sections 1798.81.5 and 1798.82.  (*See* Am. Compl. ¶ 65.)  As explained above, those claims are fatally deficient.  Accordingly, alleged violations of these statutes cannot satisfy the "unlawful" prong of the UCL.  *See, e.g., Sybersound Records, Inc. v. UAV Corp.*, 517 F.3d 1137, 1152-53 (9th Cir. 2008) (affirming dismissal of UCL claim because alleged conduct was not independently unlawful); *Avila v. Countrywide Home Loans*, No. C 10-05485 LHK, 2010 WL 5071714, at *6 (N.D. Cal. Dec. 7, 2010) (dismissing a UCL claim premised on a violation of an underlying law for which plaintiff had failed to state a claim).

### B.   Plaintiff Does Not Plausibly Allege That Uber Engaged in Any Unfair Business Practice

Plaintiff's assertion that Uber's unspecified "acts, omissions, and conduct also violate the unfair prong of the UCL" similarly fails.  Although courts are divided as to what constitutes an "unfair" activity under the UCL, Plaintiff makes no attempt to plead facts that demonstrate "unfair" conduct under any definition.  *First,* Plaintiff has pleaded no facts that plausibly suggest that Uber's

acts, omissions, or conduct "offend an established public policy [or that they are] immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers." *McDonald v. Coldwell Banker*, 543 F.3d 498, 506 (9th Cir. 2008); *Buena Vista, LLC v. New Res. Bank*, No. C 10-1502 CW, 2010 WL 3448561, at *5 (N.D. Cal. Aug. 31, 2010).  In fact, Plaintiff generally identifies no "unfair" conduct at all beyond that alleged to be "unlawful" under the UCL (which does not support a UCL claim) and fails to show how Uber's alleged conduct could violate the "unfair" provision.  (*Compare* Am. Compl. ¶¶ 50-58, 65 *with* Am. Compl. ¶¶ 67-70.)

      *Second,* Plaintiff's allegations of unfairness are not "tethered to some legislatively declared policy or proof of some actual or threatened impact on competition" in Uber's industry, as would be required to establish "unfairness" under the definition established in *Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 185-87 (1999).  *See, e.g.*, *Baba v. Hewlett-Packard Co.*, No. C 09-05946 RS, 2010 WL 2486353, at *7-8 (N.D. Cal. June 16, 2010) (consumer UCL claims asserting "unfair" practices must be "tethered to some legislatively declared policy"); *Belton v. Comcast Cable Holdings, LLC*, 151 Cal. App. 4th 1224, 1239-40 (2007) ("This court . . . has followed the line of authority that also requires the allegedly unfair business practice be 'tethered' to a legislatively declared policy or has some actual or threatened impact on competition.").  Because Plaintiff has provided no details or facts indicating how Uber's conduct is unfair—other than the conclusory allegations contained in paragraphs 68-70 of the Amended Complaint—his claim under the UCL "unfairness" prong should be dismissed.  *See, e.g.*, *Levitt v. Yelp! Inc.*, No. C 10-1321 MHP, 2011 U.S. Dist. LEXIS 99372, at *19-20 (N.D. Cal. Mar. 22, 2011) (dismissing UCL claim where plaintiffs had failed to show the alleged conduct was "unfair" under any test); *Smith & Hawken, Ltd. v. Gardendance, Inc.*, No. C 04-1664 SBA, 2004 WL 2496163, at *5 (N.D. Cal. Nov. 5, 2004) (dismissing UCL claim and finding that "[a plaintiff] alleging unfair business practices under the unfair competition statutes must state with reasonable particularity the facts supporting the statutory elements of the violation").

**C.     Plaintiff Does Not Plausibly Allege That Uber Engaged in Any Fraudulent Business Practice**

Finally, Plaintiff cannot state a claim under the UCL's "fraud" prong—something he attempts to do in a single sentence in paragraph 68 of the Amended Complaint—because he has failed to satisfy the minimal pleading requirements of Rule 8(a), much less pled any alleged fraud with the particularity required under Rule 9(b).  *See, e.g.*, *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) ("Averments of fraud must be accompanied by the 'who, what, when, where, and how' of the misconduct charged.");  *In re Tobacco II Cases,* 46 Cal. 4th 298, 326 (2009) (the UCL "imposes an actual reliance requirement on plaintiffs prosecuting a private enforcement action under the UCL's fraud prong").

CONCLUSION

The shortcomings in the Amended Complaint are not mere technical pleading defects that can be remedied by amendment.  On the contrary, they are fundamental failings in the theory of Plaintiff's claims.  Accordingly, allowing further amendment would be futile.  The Court should therefore dismiss the Amended Complaint with prejudice.  *See, e.g., Sisseton-Wahpeton Sioux Tribe v. United States*, 90 F.3d 351, 356 (9th Cir. 1996) (affirming denial of leave to amend as further amendment "would be redundant and futile").

Dated: June 18, 2015                    Respectfully submitted,


                                        By:  /s/ Michael Li-Ming Wong
                                            MICHAEL LI-MING WONG
                                            THAD A. DAVIS
                                            JOSHUA A. JESSEN
                                            PRIYANKA RAJAGOPALAN

                                            *Attorneys for Defendant Uber Technologies, Inc.*

Gibson, Dunn & Crutcher LLP