GIBSON, DUNN & CRUTCHER LLP
MICHAEL LI-MING WONG (SBN 194130)
  mwong@gibsondunn.com
THAD A. DAVIS (SBN 220503)
  tdavis@gibsondunn.com
555 Mission Street, Suite 3000
San Francisco, CA 94105-0921
Telephone: 415.393.8200
Facsimile:  415.393.8306

GIBSON, DUNN & CRUTCHER LLP
JOSHUA A. JESSEN (SBN 222831)
  jjessen@gibsondunn.com
PRIYANKA RAJAGOPALAN (SBN 278504)
  prajagopalan@gibsondunn.com
1881 Page Mill Road
Palo Alto, CA 94304
Telephone: 650.849.5300
Facsimile:  650.849.5333

*Attorneys for Defendant Uber Technologies, Inc.*

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SASHA ANTMAN, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>UBER TECHNOLOGIES, INC. and Does 1-50,<br><br>Defendant. | No. 3:15–cv–01175–LB<br><br>**DECLARATION OF MICHAEL LI-MING WONG IN SUPPORT OF UBER TECHNOLOGIES, INC.'S MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT**<br><br>*HEARING:*<br>• DATE: SEPTEMBER 17, 2015<br>• TIME: 9:30 A.M.<br>• PLACE:  COURTROOM C, 15TH FLOOR<br>     THE HONORABLE LAUREL BEELER |

Gibson, Dunn &

I, Michael Li-Ming Wong, declare as follows:

1.      I am an attorney at law licensed to practice before all the Courts of the State of California and this Court.  I am a partner with the law firm of Gibson, Dunn & Crutcher LLP, counsel of record for Defendant Uber Technologies, Inc. ("Uber") in this case.

2.      I submit this declaration in support of Uber's Motion to Dismiss Plaintiff's Amended Complaint Pursuant to Fed. R. Civ. P. 12(b).  I make this declaration based on my own personal knowledge, and, if called as a witness, could and would testify competently thereto.

3.      Attached hereto as **Exhibit A** is a true and correct copy of an Uber Press Release ("Press Release"), dated February 27, 2015, obtained from the Uber website on June 9, 2015, and available at http://blog.uber.com/2-27-15.  For the Court's ease of reference, relevant portions of the document have been highlighted in yellow.

4.      Attached hereto as **Exhibit B** is a true and correct copy of a Capital One credit card application, obtained from the Capital One website on June 3, 2015, and available at https://application2.capitalone.com/icoreapp/jsp/icoreRouting.faces?s=0013093004000xxco31xx1zzz zzzzzxxzuns11zzzzzzzzzzzzzz&iarc=uns.  The first page of Exhibit B depicts the Capital One credit card application as it appears at the link above, while the third page depicts the same Capital One credit card application with the pop-up explanation for the "Social Security Number" field, which appears when a user clicks the blue "i" button to the right of the "Social Security Number" field.

5.      Attached hereto as **Exhibit C** is a true and correct copy of the California Senate Committee on Privacy's Bill Analysis of AB 700, in the 2001-2002 Regular Session, Hearing Date: August 21, 2002, and available at http://www.leginfo.ca.gov/pub/01-02/bill/asm/ab_0651-0700/ab_700_cfa_20020821_093035_sen_comm.html.  For the Court's ease of reference, relevant portions of the document have been highlighted in yellow.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge.

Executed this 18th day of June, 2015, in San Francisco, California.

By:  /s/ Michael Li-Ming Wong_____
MICHAEL LI-MING WONG

# EXHIBIT A



NEWS: UBER GLOBAL ➤

# Uber Statement

February 27, 2015

Posted by Katherine Tassi

    

In late 2014, we identified a one-time access of an Uber database by an unauthorized third party. ==A small percentage of current and former Uber driver partner names and driver's license numbers were contained in the database.== Immediately upon discovery we changed the access protocols for the database, removing the possibility of unauthorized access.  We are notifying impacted drivers, but we have not received any reports of actual misuse of information as a result of this incident.

Uber takes seriously our responsibility to safeguard personal information, and we are sorry for any inconvenience this incident may cause.  In addition, today we filed a lawsuit that will enable us to gather information to help identify and prosecute this unauthorized third party.

Here's what we know:

- On September 17, 2014, we discovered that one of our databases could potentially have been accessed by a third party.

- Upon discovery we immediately changed the access protocols for the database and began an in-depth investigation.

- Our investigation revealed that a one-time unauthorized access to an Uber database by a third party had occurred on May 13, 2014.

- Our investigation determined the unauthorized access impacted approximately 50,000 drivers across multiple states, which is a small percentage of current and former Uber driver partners.

- <mark>The files that were accessed contained only the name and driver's license number of some driver partners.</mark>

- To date, we have not received any reports of actual misuse of any information as a result of this incident, but we are notifying impacted drivers and recommend these individuals monitor their credit reports for fraudulent transactions or accounts.

- Uber will provide a free one-year membership of Experian's® ProtectMyID® Alert. If impacted driver partners have questions or need an alternative to enrolling online, please call (877) 297-7780 and provide the Engagement number listed in the notification letter.

- We have also filed what is referred to as a "John Doe" lawsuit so that we are able to gather information that may lead to confirmation of the identity of the third party.

*Katherine Tassi is Uber's Managing Counsel of Data Privacy. Prior to joining Uber, Tassi spent 4 years at Facebook as the Head of Data Protection and the Associate General Counsel in charge of the global data protection program. She spent 8 years serving in the Washington State Attorney General's Office as an Assistant Attorney General prosecuting consumer protection violations and working on high-tech litigation.*

Categories: Headlines



SIGN UP TO RIDE

FEATURED ARTICLES



## Making Our Roads Safer—For Everyone

A new report conducted in partnership with Mothers Against Drunk Driving (MADD) reveals that when empowered with more transportation options like Uber, people are making better choices that save lives.

January 27, 2015
Posted by Michael
Categories: Headlines, Impact

 SHARE



## In The Driver's Seat: A Closer Look At The Uber Partner

# Experience

New technologies are creating opportunities no one could have imagined. To understand Uber's place in that trend, we commissioned a survey of our driver-partners and put together a comprehensive analysis.

January 22, 2015
Posted by Jonathan Hall
Categories: Behind the Wheel, Impact

≪ SHARE



UBER.COM    ·    CITIES

·    DRIVE

HELP CENTER    ·    CAREERS

·    DEVELOPERS    ·    ABOUT US

# EXHIBIT B





**Clearest Credit Card Application**

# Capital One® Credit Card — Application

🔒 This page is secure. ⓘ

Questions? Review our FAQ.

## You chose a great card. Now applying is fast and easy!



**Platinum Credit Card**

**Average Credit** ⓘ

**View Rates & Disclosures**

### The first step toward achieving your goals

- Access to a higher credit line after making your first 5 monthly payments on time
- Fraud Coverage if your card is lost or stolen
- Manage your account online, by phone, or mobile app

| Purchase APR | Transfer APR |
|---|---|
| 24.9% variable APR | 24.9% variable APR |
| **Annual Fee** | **Transfer Fee** |
| $0 Intro fee for the first year, then $19 | None |

## Tell Us About Yourself

*=Required Field

**First Name** *  **MI**  **Last Name** *  **E-mail Address** * ⓘ

**Street Address Line 1** *  **Street Address Line 2**

**City** *  **State** *  Please select ▼  **ZIP Code** *

**Primary Phone Number** *  ( ) -  **Secondary Phone Number**  ( ) -  **Employer Phone Number**  ( ) - ⓘ

🔒 **Social Security Number** * - - ⓘ  **Date of Birth** * MM / DD / YYYY  **† Total Annual Income** * $ .00 per year ⓘ

We may require proof of income.

† Alimony, child support, or separate maintenance income need not be revealed if you do not choose to have it considered as a basis for repaying this loan.

**Do you rent or own your home?**
○ Own ○ Rent ○ Other

**Monthly rent/mortgage payment** *
$ .00 ⓘ

**Do you have an investment account (for example, 401k, brokerage accounts, etc.)?**
○ Yes ○ No

## Additional Information

* = Required Field



**What is your current employment status?** *

[ Please select ▼ ]

**If offered, would you be interested in blank checks to use for cash advances?**

○ Yes   ○ No

**Do you have any bank accounts?** *

[ Please select ▼ ]

▶ **Would you like to choose a card design?**          Show details  [+]

## Important Disclosures

Printable Version 🖨

Before you submit your application, please read through these Important Disclosures, which contain additional information about eligibility, rates, fees, and other costs, as applicable.



### CAPITAL ONE® IMPORTANT DISCLOSURES

Interest Rates and Interest Charges

| | |
|---|---|
| **Annual Percentage Rate (APR) for Purchases and Transfers** | **24.9%**.<br>This APR will vary with the market based on the Prime Rate. |
| **APR for Cash Advances** | **24.9%**.<br>This APR will vary with the market based on the Prime Rate. |
| **Paying Interest** | Your due date is at least 25 days after the close of each billing cycle. We will not charge you intere on new purchases, provided you have paid your previous balance in full by the due date each month. We will begin charging interest on cash advances on the transaction date. |



CONTINUE TO REVIEW



**About SSL Certificates**

**Legal**

MEMBER FDIC

Privacy
Security
Terms and Conditions

Equal Housing Lender

This site provides information about and access to financial services offered by the Capital One family of companies, including Capital One Bank (USA), N.A. and Capital One, N.A., members FDIC.
©2015 Capital One
Capital One is a federally registered service mark. All rights reserved.
Blank Check® is a registered trademark of Capital One.
Capital One does not provide, endorse, nor guarantee and is not liable for third party products, services, educational tools, or other information available through this site. Read additional disclosures.





# Capital One® Credit Card — Application



🔒 This page is secure. ⓘ
Questions? Review our FAQ.

## You chose a great card. Now applying is fast and easy!

**Platinum Credit Card**

**Average Credit** ⓘ

**View Rates & Disclosures**

### The first step toward achieving your goals

- Access to a higher credit line after making your first 5 monthly payments on time
- Fraud Coverage if your card is lost or stolen
- Manage your account online, by phone, or mobile app

| **Purchase APR** | **Transfer APR** |
|---|---|
| 24.9% variable APR | 24.9% variable APR |
| **Annual Fee** | **Transfer Fee** |
| $0 Intro fee for the first year, then $19 | None |

## Tell Us About Yourself

*=Required Field

First Name * 　MI 　Last Name * 　　E-mail Address * ⓘ

Street Address Line 1 * 　　Street Address Line 2

City * 　State * 　ZIP Code *
Please select ▼

Primary Phone Number * 　Secondary Phone Number 　Employer Phone Number ⓘ
(　) 　- 　　(　) 　- 　　(　) 　- 　

🔒 Social Security Number * 　Date of Birth * 　+ Total Annual Income * ⓘ
-　- ⓘ 　　.00 per year ⓘ



We may require proof of income.

Alimony, child support, or separate maintenance income need not be revealed if you do not choose to have it considered as a basis for repaying this loan.

Do you rent or own your home? 　Monthly rent/mortgage payment
○ Own ○ Rent ○ Other 　$ 　.00 ⓘ

Do you have an investment account (for example, 401k, brokerage accounts, etc.)?
○ Yes ○ No

## Additional Information

* = Required Field

3



**What is your current employment status?** *

Please select ▼

**If offered, would you be interested in blank checks to use for cash advances?**

○ Yes   ○ No

**Do you have any bank accounts?** *

Please select ▼

---

▶ **Would you like to choose a card design?**                    Show details  [+]

## Important Disclosures

Printable Version 🖨

Before you submit your application, please read through these Important Disclosures, which contain additional information about eligibility, rates, fees, and other costs, as applicable.



**CAPITAL ONE® IMPORTANT DISCLOSURES**

Interest Rates and Interest Charges

| | |
|---|---|
| **Annual Percentage Rate (APR) for Purchases and Transfers** | **24.9%**.<br>This APR will vary with the market based on the Prime Rate. |
| **APR for Cash Advances** | **24.9%**.<br>This APR will vary with the market based on the Prime Rate. |
| **Paying Interest** | Your due date is at least 25 days after the close of each billing cycle. We will not charge you intere on new purchases, provided you have paid your previous balance in full by the due date each month. We will begin charging interest on cash advances on the transaction date. |



**CONTINUE TO REVIEW**

✓ **Norton**
  SECURED
powered by Symantec

**About SSL Certificates**

**Legal**
Privacy
Security
Terms and Conditions

**MEMBER FDIC**

Equal Housing Lender

This site provides information about and access to financial services offered by the Capital One family of companies, including Capital One Bank (USA), N.A. and Capital One, N.A., members FDIC.
©2015 Capital One
Capital One is a federally registered service mark. All rights reserved.
Blank Check® is a registered trademark of Capital One.
Capital One does not provide, endorse, nor guarantee and is not liable for third party products, services, educational tools, or other information available through this site. Read additional disclosures.

EXHIBIT C

SENATE COMMITTEE ON PRIVACY

Senator Steve Peace, Chair

2001-2002 Regular Session


| | |
|---|---|
| AB 700 | A |
| Assembly Member Simitian | B |
| 08/05/02 | |
| Hearing Date: 08/21/02 | 7 |
| Business and Professions Code | 0 |
| DLM | 0 |
| Y | > |


SUBJECT

Personal Information: Privacy

DESCRIPTION

This is a gut and amend of a bill which originally
concerned electronic digital signatures. As it is currently
drafted, this bill would require notice of unauthorized
disclosure of sensitive financial information.
Specifically, the major provisions of AB 700 would:

  Require a state agency, person, or business who conducts
  business in the State of California to disclose any
  breach of security of their data to residents of the
  State of California whose unencrypted personal
  information was, or is reasonably believed to have been,
  acquired by an unauthorized person.

  Define "personal information" as, an individual's first
  name or first initial and last name, in combination with
  a social security number, driver's license or California
  Identification Card number, or financial account number
  (further defined below.)

  Personal information would not include publicly available
  information that is lawfully made available to the


AB 700 (Simitian)
Page 2


  general public from federal, state, or local government
  records.

  Define "breach of the security of the system" as
  acquisition of computerized data that compromises the
  security, confidentiality or integrity of personal
  information maintained by the agency. However, good faith
  acquisition of personal information by an employee or
  agent of the agency for the purposes of the agency shall
  not be deemed a breach in the security of the system,
  provided that the personal information is not used or
  subject to further unauthorized disclosure.

  Require that the disclosure must be made in the most
  expedient timeframe possible and without unreasonable
  delay, consistent with the legitimate needs of law
  enforcement or any measures necessary to determine the
  scope of the breach and restore the reasonable integrity
  of the data system.

This analysis reflects amendments to be presented in
Committee.

BACKGROUND

On April 5, 2002, computer hackers were able to illegally
access sensitive financial and personal information,
including Social Security numbers, of approximately 265,000
state workers, from a state database maintained at the
Stephen P. Teale Data Center. According to the owner of the
information, the California State Controller's Office, the
information on these computers also contained employees'
names and deduction information, but did not include bank
account numbers, home addresses, or phone numbers.

On June 6, 2002, the Senate Committee on Privacy, chaired

by Senator Peace the author of SB 1386 (a mirror to the
instant bill), held an informational hearing on the
incident to explore why the breach, which reportedly
occurred on April 5, 2002, was not discovered until May 7,
2002 and employees were not notified until May 21, 2002.
Testimony at the hearing reportedly revealed that during
this period of time, unauthorized persons in
Germany attempted to access one state workers' bank account
and another had an unauthorized change of address attempt
made on her credit card account.


AB 700 (Simitian)
Page 3


Recently, it was also disclosed that an unauthorized
individual using an access code      normally employed
by Ford Motor Credit had accessed 13,000 full credit
histories of consumers from Experian, including names,
addresses, Social Security numbers, mortgage information
and credit-card account details.  In that case, both Ford
Motor
Credit and Experian notified the affected consumers, a
practice this bill seeks to encourage.

Unfortunately, not all companies are as forthcoming.
Background materials prepared for the Senate Privacy
Committee hearing included a recent article reporting an
incident involving Bank One.  In that case, a former
employee sold hundreds of financial records to an identity
theft ring but the company never told its customers.  The
article stated:

> "The incident also highlights what privacy experts say
> is the biggest problem surrounding identity theft
> incidents - corporate secrecy.  Bank One never told
> its customers about the problem.  Disclosure only came
> eight months after the theft - when a victim received
> a call from the Secret Service, discovered someone had
> purchased a Jaguar in his name and contacted [the
> local news channel].  In fact, it's common that
> consumer victims aren't told about a break-in, as
> companies try to avoid the potential embarrassment and
> cross their fingers that no crimes will actually be
> committed with the stolen data."

### CHANGES TO EXISTING LAW

1)  _Existing law_  provides that an agency may not disclose
    any personal information in a manner that would link the
    information disclosed to the individual to whom it
    pertains unless the disclosure falls into one of a number
    of specified exceptions and requires an agency to
    maintain an accurate accounting of the date, nature and
    purpose of each disclosure of a record made pursuant to
    specified exceptions.  (Civil Code sections 1798.24 and
    1798.25.)

2)  _Existing law_  regulates the maintenance and
    dissemination of personal information by  state agencies
    under the Information Practices Act.  (Civil Code section


AB 700 (Simitian)
Page 4


    1798 et. seq.)

3)  _Existing law_  requires a business to take all reasonable
    steps to destroy or arrange for the destruction of a
    customer's records containing personal information which
    is no longer to be retained by the business, as
    specified.  (Section 1798.81.)

4)  _Existing law_  provides that the crime of identity theft
    occurs when any person willfully obtains personal
    identifying information of another person and uses that
    information for an unlawful purpose.  Existing law
    defines "personal identifying information" as the name,
    address, telephone number, driver's license number,
    social security number, place of employment, employee
    identification number, mother's maiden name, demand
    deposit account number, savings account number, or credit
    card number of an individual person.  (Penal Code section
    530.5.)

5)  _Existing law_  declares that a court of this state may
    exercise jurisdiction on any basis not inconsistent with

the Constitution of this state or of the United States.
(Code of Civil Procedure 410.10.)

1)　This bill would provide that state agencies, as well
as persons or businesses which conduct business in the
state of California that own or licenses computerized
data that includes personal information, must disclose
any breach of the security of the system to residents of
the state of California following discovery or
notification of a breach to residents of the state of
California whose unencrypted personal information was, or
is reasonably believed to have been, acquired by an
unauthorized person.

Residency would be determined by the most recent mailing
address, telephone number or e-mail address on file with
the agency, person or business.

2)　The bill would require that any agency, person or
business that maintains computerized data that includes
personal information that the agency, person or business
does not own, shall notify the owner or licensee of the
information of any breach of the security of the data
immediately following discovery, if the personal

AB 700 (Simitian)
Page 5

information was, or is reasonably believed to have been,
acquired by an unauthorized person.

3)　The bill would provide that notice must be given in the
most expedient timeframe possible and without
unreasonable delay, consistent with:

　　The legitimate needs of law enforcement to delay
　　notice if a law enforcement agency determines that the
　　notification will impede a criminal investigation or;

　　any measures necessary to determine the scope of
　　the breach and restore the reasonable integrity of the
　　data system prior to giving notice.

Notice could be provided either:

　　in writing, or;

　　electronically if provided consistent with the
　　provisions of Section 7001 of Title 15 of the United
　　States Code, or;

　　through any mean contained in an information
　　security policy that is applicable to information
　　security practices and treatment of personal
　　information consistent with the timing requirements of
　　the bill.

If the cost of compliance would exceed two-hundred and
fifty thousand dollars ($250,000), or the affected class
of subject persons to be notified would exceed
five-hundred thousand (500,000), or the person or
business does not have sufficient contact information,
substitute notice may be provided.

Substitute notice shall consist of all of the following:
e-mail notice when the person or business has an email
address for the subject persons, conspicuous posting of
the notice on a web page if the person or business
maintains one, and notification to major statewide media.

AB 700 (Simitian)
Page 6

4)　The bill contains the following definitions:

　　" Personal information " means an individual's first
name or first initial and last name, in combination
with any one or more of the following data elements:
　　(1)　　social security number
　　(2)　　driver's license or California
Identification Card number

<pre>
    (3)     account number, credit or debit card number,
            in combination with any required security code,
            access code or password, that would permit access
            to an individual's financial account;
        when either the name or the data elements
    contained in 1-3 are not encrypted.

    Personal information does not include publicly
    available information that is lawfully made available
    to the general public from federal, state, or local
    government records.

      " Breach of the security of the system " means
    unauthorized acquisition of computerized data that
    compromises the security, confidentiality or integrity
    of personal information maintained by the agency.

    However, good faith acquisition of personal
    information by an employee or agent of the agency for
    the purposes of the agency shall not be deemed a
    breach in the security of the system, provided that
    the personal information is not used or subject to
    further unauthorized disclosure.



                        COMMENT
    _____
    1.   Author and supporters stated need for legislation:
         Forewarned is forearmed against identity theft
    _____

        The author offers the following in support of this
    measure: "AB 700 will help consumers protect their
    financial security, by requiring those entities which
    maintain personal information to provide notice when the



    AB 700 (Simitian)
    Page 7



    entity discovers that unauthorized persons accessed
    sensitive information."

    "The recent incident at the Stephen P. Teale Data Center
    which saw the personal financial information of  hundreds
    of thousands of state workers fall into the hands of
    computer hackers is a dramatic demonstration of an all
    too common event - a breach in data base security which
    exposes victims to the further harm of identity theft.
    In the Teale incident, authorities knew of the breach in
    security almost a month before state workers were told.

    "We can at least be thankful that victims were given the
    opportunity to take protective measures based upon notice
    of the event - albeit late notice. All too often events
    of this sort go completely unreported.  How can this be?
    The embarrassment of
    disclosure that a company or agency was 'hacked,' or the
    fear of lost business based upon shoddy information
    security practices being disclosed overrides the need to
    inform the affected persons.  In other instances, credit
    card issuers, telephone companies and internet service
    providers, along with state and local officials 'handle'
    the access of consumer's personal and financial
    information by unauthorized persons internally, often
    absorbing the losses caused by fraud as a matter of
    'customer service' without ever informing the customer of
    the unauthorized use of his/her account.

    "Californians need to know when unauthorized activity
    occurs on their accounts, or when unauthorized persons
    have access to sensitive information, in order to take
    appropriate steps to protect their financial health. AB
    700 simply gives them the information necessary to
    protect their financial wellbeing."

    2.   Recent amendments mirror SB 1386 (Peace) and address
         opposition concerns
    _____

        a)    Change the word "access" to "acquire"
              _____

        Originally, the event which triggered a notice under
    AB 700 was that personal information was "accessed" by
    unauthorized persons.  The bill now provides the
    personal information must be "acquired" by
    unauthorized persons. This change was made in order to



    AB 700 (Simitian)
</pre>

address concern that casual access, for instance a
computer screen with sensitive information on the
active page, could be considered "accessible" to
anyone in the room, triggering the bill's notification
requirement. The word "acquire" connotes the author's
intention that the information must come into the
possession of the unauthorized person, or reasonably
be suspected of being in the possession of an
unauthorized person, before notice is required.

    b)   " Inadvertent" disclosures addressed

     A very closely related issue to the acquire/access
concern involves the so-called "inadvertent"
disclosure. The concern is that an agency or business
may have authorized persons who accidentally view
materials beyond the scope of their authorization.  If
they realized the mistake and closed the file or
computer window without any threat of harm to the
person whose information was technically
"compromised," the bill prior to amendment could have
required a notice. Another scenario involves vendors,
such as check printing companies, who might send a
batch of checks to the wrong branch of a client bank.
If the mistake is caught and the checks are routed to
the correct facility, notification to the consumers of
the "breach in security" of their checking accounts
seems an unnecessary overreaction.  The author has
addressed this situation by adding the following
language: "Good faith acquisition of personal
information by an employee or agent of the person or
business  for the purposes of the person or business
shall not be deemed a breach in the security of the
system, provided that the personal information is not
used or subject to further unauthorized disclosure."

     It is the author's belief that the common sense of
agencies and industry will prevail, and that notices
will only be sent out to affected persons whose
sensitive financial data has fallen into the hands of
persons who would use the information to commit fraud.
 This amendment is intended to further this goal.

    c)    Extra-territorial concerns addressed

AB 700 (Simitian)
Page 9

     Some concern initially existed about the possible
federal Commerce Clause problems posed by the failure
of the measure to limit its scope to California and
her residents.  The bill now reads, "(A)ny person or
business who conducts business in California, that
owns or licenses computerized data that includes
personal information shall disclose any breach of the
security of the system to residents of the state of
California following discovery or notification of a
breach in the security of the data to any person whose
unencrypted personal information was, or is reasonably
believed to have been, acquired by an unauthorized
person. For purposes of this section, residency shall
be established by the most recent mailing address,
telephone number or e-mail address on file with the
person or business.

The Internet Alliance (IA) expressed concerns about
this amendment, in particular about providing that the
protections of AB 700 would cover California residents
as determined by the most recent e-mail address. The
IA claims that this is an impossible standard to meet,
as a physical location cannot be determined by an
e-mail address. In support of this contention, they
cite a note from a law review article which states, "a
sender generally cannot determine the location of a
recipient if the only information he or she has is the
recipient's e-mail address." Sorkin, Technical and
Legal Approaches to Unsolicited Electronic Mail, 2001
35 U.S.F. L. Rev. 325, 380 n. 269.  However, the note
in question may not be on point, as it discussed the
difficulty for jurisdictions to find spammers -- who
often hide their true e-mail address.

In addition, this contention has expressly been
considered and rejected by our courts.  In the case of
Ferguson v. Friendfinders (2002) 94 Cal. App. 4th ,
1255 (Cert. Denied), the court considered the issue of

whether regulation of internet activity violates the
Commerce Clause of the United States Constitution.  In
part, it was argued that "the Internet functions in
cyberspace, (a) place which respondents characterize
as being wholly insensitive to geographic
distinctions.'(Citation omitted.) Thus, respondents
maintain, an e-mail address simply does not logically
correspond to a geographic residence." Ibid.

AB 700 (Simitian)
Page 10

In rejecting this contention, the Ferguson court
stated, "the record does not support the respondent's
claim that it is impossible to determine the
geographic residence (of a UCE recipient.) Both the
Attorney General and Ferguson dispute this contention.
They suggest that lists of e-mail addresses sorted by
geographic residence already exist or can be created
and utilized.  Respondents have offered no evidence
supporting a contrary conclusion." Ibid.

    d)   Preemption of separate local notice requirements

The author has amended the bill in response to
industry concerns that multiple and divergent
notification policies promulgated by local government
would be a burden.  To address this concern, the bill
as amended will, "supersede and preempt all rules,
regulations, codes, statutes, or ordinances of all
cities, counties, cities and counties, municipalities,
and other local agencies regarding the matters
expressly set forth in this section."

3.   Remaining concerns are not objections to the
   requirements of AB 700

    a)   Cap Remedies

The Information Technology Association of America
(ITAA) writes the committee raising the "specter of
lawsuits targeting companies for even innocent
mistakes."  They request amendments to "cap the
liability exposure."  However, they offer no
suggestion for how to effectuate such a cap.  It
should be noted that AB 700 does not create any new
penalty in law.

    b)   Request for delayed implementation date to reach
    safe harbor for encrypted data

Merrill Lynch separately requests that the bill's
date of implementation be delayed until July 1, 2003,
to allow time to bring themselves within the safe
harbor provided for encrypted data.  "According to our
information technology experts, it will take a minimum
of six months to design, test and deploy encryption

AB 700 (Simitian)
Page 11

systems for our financial data," Merrill Lynch claims.
They add, "this issue is directly tied to the
jurisdiction concern, as the greater the reach of the
legislation, the more data that we will need to
encrypt."

The author responds that the ability of industry to
come under the safe harbor through encryption of part
of their data base, for instance encryption of all
names, will substantially shorten the time needed. He
has taken amendments to expressly allow safe harbor
for files which are partially encrypted in order to
address this concern. In addition, the amendments
which expressly confine the notices to "residents of
California" are directly responsive to the
jurisdiction concern.

4.   Related pending legislation: AB 2297 (Simitian) and SB
   1386 (Peace)

    a)   AB 2297 (Simitian)

In relevant part, AB 2297 (Simitian) would require a
person or entity that collects personal and
identifying information about individuals located in

California through the Internet to conspicuously post
and comply with a privacy policy that identifies the
categories of information collected, and with whom the
person or entity may share the information;

AB 2297 would define "personal and identifying
information" as, individually identifiable information
about an individual collected online, including, among
other things, first and last name, home or other
physical address, e-mail address, telephone number,
and social security number.

In a previous version of AB 2297, the bill contained
language provided, "In the case of a breach of
security that results in the disclosure of personal
and identifying information in a manner not covered by
the privacy policy, the person or entity shall notify
each individual who may have been affected, and, if
known,  the categories of information that were
improperly disclosed, and to whom, if known, the
information was improperly disclosed. ?"


AB 700 (Simitian)
Page 12


The notification language proved problematic for the
business community, and the author attempted in good
faith to negotiate compromise. A deal was struck,
whereby the author removed the notification language
from AB 2297, and agreed to adopt language to mirror
the language in SB 1386.  The result of this
compromise is that AB 700 in its current form enjoys
no formal opposition.
AB 2297 (Simitian) is currently pending on the Senate
Floor.

     b)   SB 1386 (Peace)

     SB 1386 (Peace) passed out of the Senate Judiciary
     Committee on a 6-1 vote, and off the Senate Floor
     32-0, as a measure which clarified that that
     personally identifiable information that is the
     subject of a state agency's privacy policy is not
     subject to disclosure under the Public Records Act.

     SB 1386 was substantially amended in the Assembly, to
     become a vehicle to require notification of
     unauthorized disclosure of personal financial
     information. In its current incarnation, SB 1386
     passed the Assembly Judiciary (9-3), Business and
     Professions (7-1) and Appropriations (16-7)
     Committees. SB 1386 is currently pending on the
     Assembly Floor.

Support: None Known for this version

Opposition: None Known for this version

                          HISTORY

Source: Author

Related Pending Legislation: SB 1386 (Peace), currently
pending on Assembly Floor
                    AB 2297 (Simitian), currently pending
on Senate Floor

Prior Legislation: None Known

Prior Vote: Not Applicable for this version


AB 700 (Simitian)
Page 13


                    -

_____  *************