BOERSCH SHAPIRO LLP
David W. Shapiro (State Bar No. 219265)
Dshapiro@boerschshapiro.com
Martha Boersch (State Bar No. 126569)
Mboersch@boerschshapiro.com
Lara Kollios (State Bar No. 235395)
Lkollios@boerschshapiro.com
1611 Telegraph Ave., Ste. 806
Oakland, CA 94612
Telephone: (415) 500-6640

Attorneys for Movant
Subscriber

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| SASHA ANTMAN, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>UBER TECHNOLOGIES, INC. and DOES 1-50<br><br>Defendants. | Case No. 3:15-cv-01175-LB<br><br>**SUBSCRIBER'S REPLY IN SUPPORT OF MOTION FOR PROTECTIVE ORDER**<br><br>Date: January 14, 2015<br>Time: 9:30 am<br>Ctrm: C – 15th Floor<br>Before: Hon. Laurel Beeler |

I.  **INTRODUCTION**

The relief Subscriber is seeking is narrow—to stay Uber's effort to unmask Subscriber's identity pending Subscriber's Ninth Circuit appeal in the separate action brought by Uber in the *Doe* litigation.  This Court has already ruled that staying the enforcement of the nearly identical subpoena to Comcast in the *Doe* litigation is warranted to protect Subscriber's First Amendment and privacy rights to proceed anonymously on the internet and to preserve Subscriber's appellate rights.  Uber's claims in this litigation that it needs discovery of Subscriber's identity now ring hollow because Uber again fails to offer any evidence showing that Subscriber committed the alleged May 12 breach or is an identity thief.  These facts are necessary before Uber can show relevancy to the single question at issue during the interim phase of these proceedings—whether plaintiff Antman suffered injury in fact.  Moreover, Uber's claims of urgency are belied by its recent request to extend the briefing schedule in Subscriber's appeal.  Kollios Decl., Ex. 1.[1]

Uber's efforts in this case to circumvent the discovery limitation in the *Doe* litigation is an abuse of the discovery process, and Uber fails to provide any answer to the case law that directs courts to prevent such abuse, particularly where, as here, the discovery is directed towards a third-party.  The Court should stay the Comcast discovery so that Subscriber can meaningfully proceed with Subscriber's pending Ninth Circuit appeal.

II.  **ARGUMENT**

   **A.  The Court should deny Uber's request for an order requiring Comcast to comply with a nearly-identical subpoena to the one stayed in *Uber v. Doe* and continue to protect Subscriber's recognized rights**

The purpose of the stay in *Doe* pending Subscriber's appeal is to protect both Subscriber's First Amendment right to proceed on the internet anonymously and Subscriber's recognized privacy interests in Subscriber's identity and payment information.  *See Doe*, Dkt. No. 24, pp. 7, 9-10; Dkt. No. 38, p.5; Dkt. No. 54, pp.2-3, 6-8; Dkt. No. 60, pp. 4-6; *Anonymous Online Speakers*, 661 F.3d at 1172-73; *Columbia Ins.*, 185 F.R.D. 573, 578 (9th Cir. 1999); *Sony Music Entertainment Inc. v. Does 1-40*, 326 F. Supp. 2d 556, 562 (S.D.N.Y. 2004); *Clement v. Cal. Dep't of Correcs.*, 364 F.3d 1148,

---

[1] All Exhibits are attached to the Declaration of Lara Kollios in Support of Reply to Motion for Protective Order, filed herewith, unless stated otherwise.

Case 3:15-cv-01175-LB   Document 66   Filed 12/23/15   Page 3 of 9

1151 (9th Cir. 2002) (the First Amendment protects the right *to receive information*, as well as the right to speak). Allowing the Comcast Subpoena to go forward here would irreparably harm those rights because Subscriber's right to receive information on the internet anonymously will be violated at the moment that Subscriber's identity is exposed, and that is exactly what Uber is seeking to do. Dkt. No. 49, Ex. 1.

Uber's argument (Opp'n, p. 5) that Subscriber's appellate rights will not be harmed because the discovery in *Doe* is subject to a different legal standard than the discovery here misses the point. Subscriber's appeal in *Doe*—and the purpose of the stay in that action—is to protect Subscriber's identity. If the Court allows similar discovery here, it would essentially nullify Subscriber's appeal.

Uber's argument also ignores the decisions holding that a litigant cannot use one proceeding to evade discovery limitations in another. *See* cases cited at Dkt. No. 58, p. 5. Uber does not address Subscriber's authority that "courts are alert to preventing discovery procedures in federal civil actions from being employed merely as a device to obtain evidence for use in some other proceeding in which discovery is less extensive." Wright & Miller, Fed. Prac. & Proc. Civ. § 2040 (3d). Instead, Uber erects a straw man by claiming that Subscriber's authority only applies to "parallel proceedings," then fabricates its own definition of "parallel proceedings" (Opp'n, p. 5), and claims that the *Doe* and *Antman* cases don't meet its new definition. In creating this new test, Uber cites to an inapposite case concerning "parallel proceedings" in the context of whether a court should use its discretion to exercise jurisdiction over an insurance coverage dispute under the Declaratory Judgment Act. *Praetorian Ins. Co. v. Analy Mortg. Center*, 2010 WL 3985261, at *5 (C.D. Cal., Oct. 8, 2010). But the issue is not about whether *Antman* and *Doe* are "parallel proceedings" as defined by Uber—the issue is whether the Court's "discretion and procedural flexibility should be utilized to harmonize the conflicting rules and to prevent the rules and policies applicable to one suit from doing violence to those pertaining to the other." *Robertson v. Qadri*, 2008 WL 162530, at *1 (N.D. Cal. Jan. 17, 2008) (citation omitted). The case law and equities support Subscriber's position that the Court should exercise its discretion in Subscriber's favor because it is the only way to preserve Subscriber's First Amendment right to receive speech anonymously on the internet and to protect Subscriber's privacy interests and appellate rights.

Case No.: C 15-01175 LB

1    The relevant case law is about preventing a party from abusing the discovery processes to
2 obtain discovery otherwise prohibited in a different proceeding, and thus to prevent the sort of
3 harassment that Uber is engaging in here.  *See, e.g., Ellison v. Autozone Inc.*, 2007 WL 1795699, at
4 *2 (N.D. Cal., June 20, 2007); *Robertson*, 2008 WL 162530, at *1; *Beard v. N.Y. Cent. R. Co.*, 20
5 F.R.D. 607, 610 (N.D. Ohio 1957).  The abuse is particularly acute here where there is no complaint
6 pending and Uber has presented no evidence connecting Subscriber's visit to a public webpage to the
7 May 12, 2014 security breach.
8    Uber spends much time arguing that the Comcast Subpoena is "highly relevant," but fails to
9 provide any facts supporting this naked conclusion.  An examination of the record proves otherwise.
10 The only fact presented on the record (in *Doe*) regarding Subscriber is that Subscriber visited a public
11 GitHub post well before the alleged May 12, 2014 data breach.  Although Uber has never fully
12 explained what that GitHub post contained, it claims that somewhere on that page was an embedded
13 security code.  Uber misleadingly claims that Subscriber "illicitly accessed Uber's GitHub page,"
14 (Opp'n, p. 8), but has offered no reason to believe that the public website could only have been
15 visited by an individual bent on "illicit" behavior.  Opp'n, p. 8.  As Uber itself told this Court, it's
16 original GitHub subpoena in the *Doe* litigation was not "narrowly tailored," and instead sought
17 information on *all* visits to *several* public webpages "over the course of several months and could
18 therefore involve individuals who have nothing to do with the [*Doe*] dispute."  *Doe*, Dkt. No. 18, p. 5.
19 Other than Subscriber's visit to the GitHub page, Uber has never offered this Court any facts
20 demonstrating that Subscriber engaged in any "illicit" activity.  Opp'n, p. 8
21    Uber cannot confirm that Subscriber even saw Uber's publicly posted security key, only
22 stating that Subscriber "apparently obtained a confidential Uber security key."  Opp'n, p. 2.  Uber
23 also relies on the mistaken assumption that Subscriber's IP address was the only unexplained IP that
24 accessed the public GitHub page.  Opp'n, p. 4.  But, Uber admits that several other unexplained IP
25 addresses (excluding bots and Uber engineers) visited the GitHub page on the date it was posted.  Ex.
26 2 (*Doe* July 9, 2015 TR pp. 9-11) ("On the day [the security key] was posted, there were four IP
27 addresses that we haven't been able to identify") ("There's one other hit associated with an
28 individual.  We don't think that individual is as interesting as Comcast's IP address).  Uber claims

these are not "as interesting," but provides no evidence to support that conclusion and provides no reasoning why Uber is permitted to invade Subscriber's privacy rather than the privacy of other lawful unidentified visitors.  *Id*.

      Moreover, the subpoena here will not advance Uber's claimed efforts to determine who accessed its database on May 12, because Comcast could do no more than reveal Subscriber's identity.  As the Court and Uber are aware, Comcast does not maintain information about its subscribers' internet activity.  Dkt. 38-1, ¶ 7.  The identity of the subscriber of an IP address that visited a public webpage does not say anything about whether plaintiff Antman suffered injury in fact—the only issue that could possibly be relevant at this interim stage of the proceedings.

      Uber's reliance on the "broad relevancy" standard that it claims applies in normal civil discovery must be rejected.  Courts in this district regularly hold third-party subpoenas to a much tougher standard than "broad relevancy" because third-parties should not be forced to suffer the same hardships as parties.  This Court acknowledged this difference when it issued its order holding that nonparties "deserve[] extra protection from the courts."  Dkt. No. 59, p. 4 (quoting *Soto v. Castlerock Farming and Transport, Inc.*, 282 F.R.D. 492, 504 (E.D. Cal. 2012)).  Thus, this Court endorsed not a simple test of "broad relevancy," but a balancing test that weighed the requesting party's needs against the burden or injury that discovery would inflict on a nonparty.  *Id*.  Even if a broad relevancy standard applied to discovery served on third parties, Uber cites no authority that would allow a defendant to serve third party discovery where, as here, there is no pending complaint and thus no stated claims or defenses to which such discovery could be relevant.[2]  The Court has "ample discretion" to temporarily stay one of Uber's numerous third-party subpoenas where it is necessary to both prevent Uber from evading a stay order in another case and from harming Subscriber's appellate and privacy rights.

      Uber attempts to advocate on behalf of plaintiff Antman, arguing that plaintiff must have these "potentially critical documents in advance of filing his amended complaint."  Opp'n, p. 8.  But,

---

[2] *See* Dkt. No. 59 at 5 (holding that "the court has seen no authority suggesting that defendants are specifically barred from taking post-dismissal, pre-amendment, non-party discovery" but then citing, as examples, two cases where the post-dismissal discovery was actually requested by *plaintiffs*).  In contrast, the plaintiff in this case has requested discovery only from Uber, and Uber has thus far refused to produce any documents.  *See, supra*, at p. 5.

1  without any evidence that Subscriber is an identity thief or involved in the alleged May 12 breach
2  (and there is none), Subscriber's identity is of no help to plaintiff or Uber.  And, plaintiff's counsel is
3  well able to argue for the discovery that he actually thinks he needs to establish Antman's claims; yet
4  plaintiff's counsel has chosen to serve no discovery on Subscriber.  Worse still, it appears that Uber
5  has been uncooperative in producing its own documents and information in response to plaintiff's
6  requests.  According to the Stipulation filed earlier this week, Uber still has not produced a single
7  document to plaintiff's counsel, even though it has been two months since plaintiff's counsel served
8  requests, and several weeks since this Court advised Uber to share information.  *Compare* Dkt. No.
9  47 (asking for an extension on Plaintiff's deadline to file an amended complaint because Plaintiff had
10 served Uber with requests on October 21 and Uber had not yet responded) *with* Dkt. No. 63 (asking
11 for another extension because Plaintiff and Uber are still "negotiating the production of documents").
12 Uber should not be allowed to harass a non-party when Uber refuses to produce its own information
13 to plaintiff Antman.

14       Finally, Uber's suggestion that the Court has "acknowledged" that the breach was done by "a
15 competitor of Uber seeking to undermine its business by stealing driver information" has no bearing
16 on whether the new Comcast Subpoena should be stayed pending Subscriber's appeal.  First,
17 importantly, to the extent the Court made any such "acknowledgment," it was based solely on news-
18 paper reports.  Dkt. 62-1, Ex. A, (*Antman*, Oct. 8, 2015 TR, p. 8).  The Court cannot permit invasive
19 third party (or any) discovery based on media reports (from Uber leaks),[3] particularly when the
20 discovery infringes on the third party's First Amendment, privacy, and appellate rights.  Second,
21 there is no evidence in the record that a competitor had anything to do with the alleged May 12
22 breach, much less evidence that Subscriber is connected to the alleged breach or a competitor.

23       The question of relevance of the Comcast Subpoena, however, is for a different day.  The
24 issue here is whether the Comcast Subpoena should be stayed pending Subscriber's appeal to the
25 Ninth Circuit to continue to protect Subscriber's First Amendment, privacy, and appellate rights.  If

---

[3] This would not be out of character for Uber.  *See, e.g.,* Matt Haber, "Does Using Uber Make You a Bad Person?" *GQ* (Nov. 29, 2015) (reporting that Uber is "evil," that Uber "sought to destroy its chief rival Lyft using fake customer requests and cancellations," that Uber "threatened to leak incriminating information about journalists," that Uber "surged prices as customers fled a hostage scene," and that Uber's CEO once "boasted, 'It's hard to be a disrupter and not be an asshole.'").

the Court denies Subscriber's requested relief here, Subscriber may still move to quash the new Comcast Subpoena upon receiving notice, as necessary.

### B. Uber's Mischaracterizes the Meet-and-Confer

Uber mischaracterizes the parties' communications by stating that (1) Subscriber and Uber met-and-conferred on a protective order regarding this subpoena and then, after agreeing to language, (2) Subscriber chose to move for this protective order without any further meet-and-confer to "delay enforcement of the subpoena." Opp'n., pp. 5-6. Uber failed to attach any evidence of these communications and both statements are incorrect.

#### i. *Background*

On October 9, 2015, the Court filed, in *Doe*, an order granting Uber's request to use information gleaned in the *Doe* matter in this litigation (hereinafter the "*Antman/Doe* Protective Order). *Doe*, Dkt. No. 71. Uber filed its request in *Antman* having never met-and-conferred with Subscriber's counsel. On October 29, 2015, in response to that order and in an effort to provide Subscriber-related information with adequate protection, Subscriber initiated a meet-and-confer with Uber's counsel at Gibson Dunn to create an "attorney's eyes only" tier of protection. Ex. 3. The parties had several meet and confer exchanges over the *Antman/Doe* Protective Order between October 29 and November 11. Ex. 4.

Then, without any notice to Subscriber's counsel that a new Comcast Subpoena had been issued a month earlier, on November 11, Uber's in-house counsel, Keith Yandell, filed a "Motion for Court Order Directing Comcast to Produce Subpoenaed Records." Dkt. No. 49. Subscriber had no notice of the new Comcast Subpoena, from Uber or Comcast, prior to November 11. Kollios Decl., ¶ 8. Soon thereafter, Subscriber reached out to Uber's counsel, informed Uber that it would be objecting to the new Comcast subpoena, and requested a briefing schedule. Ex. 4. The parties reached a briefing schedule and Subscriber confirmed that Subscriber's motion would be one for a protective order, reserving Subscriber's right to quash at a later date if the Court allowed the discovery, as necessary. Ex. 5; *see also* Dkt. No. 49-1 (Uber's Proposed Order for the Court specifically allows Subscriber 21 days to file such a motion upon receiving any notice from Comcast of a pending subpoena). Uber's outside counsel at Gibson Dunn clarified that Keith Yandell of Uber

would sign the stipulation on behalf of Uber (Mr. Yandell also submitted Uber's Opposition here). Ex. 4.

          ii.    *Uber's mischaracterizations*

In an effort to obfuscate the issue of whether the Court should continue to protect Subscriber's recognized privacy rights, Uber claimed that Subscriber was somehow deficient in its meet-and-confer efforts and employed a "brazen" strategy to "delay enforcement of the [new Comcast] subpoena." Opp'n, p. 6. The opposite is true. In its Opposition, Uber mischaracterized Subscriber's October 29, 2015 communication concerning the *Antman/Doe* Protective Order, stating that "Subscriber reached out to counsel for Uber, informed Uber that Comcast had given Subscriber notice of Uber's subpoena, and requested that Uber consent to amending the existing protective order to safeguard Subscriber's privacy interests." Opp'n, p. 3. The October 29 email was not about the new Comcast Subpoena, nor could it have been because Uber failed to disclose to Subscriber that the subpoena existed until it its public November 11, 2015 filing. Dkt. No. 49. Subscriber's counsel certainly never represented that it was aware of the Comcast subpoena. The October 29 email proves this point, and is focused on the *Doe/Antman* protective order. Ex. 3.

Uber's argument that Subscriber moved for this limited protective order without any meet-and-confer is similarly false. Once receiving notice of the new Comcast Subpoena through Uber's November 11 filing, Subscriber reached out to Uber and stated that it objected to the subpoena. Ex. 4, p. 4. The joint stipulation acknowledged the same and set forth the agreed briefing schedule.[4] Dkt. No. 53. The Court should ignore Uber's false accusations about the meet-and-confer.

          iii.    *Uber should provide Subscriber notice of any other third-party discovery seeking Subscriber's identifying information*

Uber argues that it has no obligation to notify Subscriber of third party discovery that targets Subscriber's identity and internet activity. Opp'n, p. 2 n.1. Subscriber disagrees given that any such subpoena directly impacts Subscriber's First Amendment, privacy, and appellate rights. Uber has

---

[4] Subscriber does not know the motivation behind Uber's misrepresentations. Although Mr. Yandell signed the Opposition and was not directly involved in the parties' meet-and-confer, it was clearly written by or contributed to by Uber's outside counsel, Gibson, Dunn, & Crutcher LLP (as the firm's legend appears in the footer of Uber's Opposition). Gibson Dunn was involved in the meet-and-confer and should have corrected the obvious errors.

confirmed that it is "not currently aware of any other subpoena in *Antman* that specifically requests information about the XXX.XX.XX.206 IP address associated Subscriber." Ex. 6.  Given the sensitive rights at issue, Subscriber respectfully requests that the Court require Uber to notify Subscriber before it serves any additional third party subpoenas requesting identifying or other information about the IP address associated with Subscriber, so that the parties may meet-and-confer and so that Subscriber may object where appropriate.

## III.    CONCLUSION

For the forgoing reasons, the Court should issue a protective order precluding the *Antman* Comcast Subpoena and any other third-party subpoena directed at the IP address associated with Subscriber until the Ninth Circuit has ruled on Subscriber's pending appeal in the *Doe* Litigation.

Dated:  December 23, 2015

BOERSCH SHAPIRO LLP

 /s/Martha Boersch
Martha Boersch

Attorney for Subscriber