1

2

3

4

5

6

7

UNITED STATES DISTRICT COURT

8

NORTHERN DISTRICT OF CALIFORNIA

9

San Francisco Division

10

11

| | |
|---|---|
| SASHA ANTMAN,<br><br>        Plaintiff,<br><br>    v.<br><br>UBER TECHNOLOGIES, INC.,<br><br>        Defendant. | Case No.  3:15-cv-01175-LB<br><br>**ORDER STAYING SUBPOENA**<br>[ECF Nos. 49, 58] |

**INTRODUCTION**

Two motions are before the court. Both concern a subpoena that defendant Uber Technologies, Inc., has issued to nonparty Comcast Corporation. The subpoena asks Comcast for information that would reveal the identity of one of its Internet-service customers, a nonparty who is proceeding anonymously in this case as "Subscriber." In the first motion (ECF No. 49),[1] Uber asks the court to compel Comcast to answer the subpoena. In the second motion (ECF No. 58), Subscriber asks the court to suspend the subpoena until the Ninth Circuit resolves Subscriber's appeal in a related case: *Uber Technologies, Inc. v. Doe*, No. 3:15-00908-LB (N.D. Cal.). The *Doe* appeal involves Uber's nearly identical subpoena to Comcast concerning Subscriber. In *Doe*, this

---

[1] Record citations refer to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the tops of documents.

ORDER – No. 15-cv-01175-LB

court denied Subscriber's motion to quash the subpoena but stayed the case — thereby suspending the subpoena — pending the outcome of the appeal.

The court now grants Subscriber's motion for a protective order suspending the subpoena. Comcast need not answer Uber's subpoena in this case until the Ninth Circuit has resolved Subscriber's appeal in *Doe*. The court therefore also denies Uber's motion to compel compliance with the subpoena.[2]

\* \* \*

### STATEMENT

This dispute involves two related cases. Both are in this court. Both involve Uber and nonparty Subscriber — the latter being an anonymous Comcast customer who Uber believes may have breached its secure database and stolen information about Uber drivers.[3] Both cases also involve an essentially identical subpoena (the subject of this order) that Uber issued to Comcast seeking information that would unmask Subscriber's anonymity and reveal his or her identity.

\* \* \*

### 1. *Uber v. Doe,* No. 15-908

In *Doe*, Uber sued a John Doe defendant in an effort to identify and hold liable the unknown party or parties who breached its database. Upon investigating the incident, Uber discovered (in sum) that an Internet address registered to Comcast may have been responsible for the breach and data theft. (*See Doe*, ECF No. 11 at 2-3, ECF No. 20 at 2-3.) This court granted Uber's motion for early discovery — *i.e.*, discovery before the Rule 26(f) conference — to help it identify John Doe. (*See Doe*, ECF Nos. 11, 20.) Specifically, the court allowed Uber to issue a subpoena to Comcast that would compel the latter to turn over information identifying the customer who is associated

---

[2] Strictly speaking, the subpoena in *Doe* was directed to Comcast Business Communications, LLC (*Doe*, ECF No. 16-1 at 4), while the subpoena in this case seeks information from Comcast Corporation (*Antman*, ECF No. 49 at 5). The difference has had no impact on the parties' discussion. This order thus refers simply to "Comcast."

[3] Uber operates what is effectively an Internet-age taxi service, using smartphone technology to connect drivers and passengers. As one would expect, Uber maintains records on the "partner-drivers" to whom it licenses its smartphone application and whom it lets use the Uber name. (*See Antman,* ECF No. 24 at 9.)

with the target Internet address. (*Doe*, ECF No. 20.) That customer is the person proceeding in both *Doe* and this case as Subscriber.

When, at the court's direction, Comcast notified Subscriber that Uber was seeking information that would reveal his or her identity, Subscriber moved to quash the subpoena. (*Doe,* ECF Nos. 24, 25.) The court denied that motion and Subscriber appealed that denial to the Ninth Circuit. (*Doe,* ECF Nos. 51, 52, 56.) Then, at Subscriber's request, the court stayed all proceedings in *Doe*, thus suspending the subpoena, until the Ninth Circuit resolves the appeal. (*Doe,* ECF No. 66.)

\* \* \*

### 2.  *Antman v. Uber*, No. 15-1175

In this case, former Uber driver Sasha Antman sued Uber over the breach. Mr. Antman claims that his personal data was stolen in the breach and that this injured him. (*See generally Antman,* ECF No. 7.) The court recently dismissed Mr. Antman's First Amended Complaint for failing to establish both "injury in fact" under Article III of the U.S. Constitution and standing under the relevant California statutes. (*Antman,* ECF No. 44.) The court granted Mr. Antman leave to amend but he has not yet filed a new complaint.

On the same day that the court dismissed the First Amended Complaint, Uber issued to Comcast essentially the same subpoena that it had propounded in *Doe*, again seeking information that would reveal Subscriber's identity, though this time under the rules of normal (rather than early) discovery. (*See Antman*, ECF No. 49 at 5-10.) The court allowed Uber to pursue the subpoena even though Mr. Antman has not filed a new complaint; the court's central reason was that Mr. Antman and Uber had both agreed that the Comcast subpoena, in seeking information about Subscriber, could yield material that would impact Mr. Antman's next amended complaint. (*Antman,* ECF No. 59.)

Which brings us to the present motions. In the first motion (ECF No. 49), Uber asks the court to compel Comcast to answer the subpoena. In the second (ECF No. 58), Subscriber asks the court to enter a protective order suspending the subpoena until the Ninth Circuit resolves Subscriber's appeal in *Doe*.

\* \* \*

United States District Court
Northern District of California

1

2          **GOVERNING LAW**

3          The present motions lie within the court's discretion. "Rule 26(c) [of the Federal Rules of Civil

4   Procedure] confers broad discretion on the trial court to decide when a protective order is

5   appropriate and what degree of protection is required." *Seattle Times Co. v. Rhinehart*, 467 U.S.

6   20, 36 (1984). More specifically, the court has "ample discretion" to modify a subpoena that

7   unduly burdens a nonparty. *Soto v. Castlerock Farming and Transport, Inc.*, 282 F.R.D. 492, 504

8   (E.D. Cal. 2012) (quoting in part *Exxon Shipping Co. v. U.S. Dep't of Interior*, 34 F.3d 774, 779

9   (9th Cir. 1994)). Nonparties subject to production subpoenas moreover "deserve[] extra protection

10  from the courts." *Soto*, 282 F.R.D. at 504 (quoting in part *High Tech Med. Instrumentation v. New

11  Image Indus.*, 161 F.R.D. 86, 88 (N.D. Cal. 1995) (citing in turn *United States v. Columbia

12  Broadcasting Sys.*, 666 F.2d 364, 371-72 (9th Cir. 1982)). That said, the nonparty seeking to

13  modify a subpoena — in this case, by delaying it — has the burden of persuading the court that

14  the subpoena presents an undue burden. *See Personal Audio LLC v. Togic Entm't*, 2014 WL

15  1318921, *2 (N.D. Cal.); *Luck v. Univ. of San Diego*, 2014 WL 7111950, *2 (S.D. Cal.); *cf.* Fed.

16  R. Civ. P. 26(c)(1) ("The court may, for good cause, issue an order to protect a . . . person from . . .

    undue burden . . . .").

17         Then there is the question of stays — of which Subscriber's request to postpone the Comcast

18  subpoena may be considered a cousin. "A stay is not a matter of right, even if irreparable injury

19  might otherwise result." *Nken v. Holder*, 556 U.S. 418, 433 (2009). "It is instead 'an exercise of

20  judicial discretion,' and '[t]he propriety of its issue is dependent upon the circumstances of the

21  particular case.'" *Id.* (quoting in part *Virginian Ry. v. United States*, 272 U.S. 658, 672 (1926) and

22  *Hilton v. Braunskill*, 481 U.S. 770, 777 (1986)). "The party requesting a stay bears the burden of

23  showing that the circumstances justify an exercise of that discretion." *Nken*, 556 U.S. at 433-34.

24  The court's discretion is not unbounded. In considering whether to stay proceedings pending

25  resolution of an appeal in another matter, the court must weigh competing concerns, including 1)

26  the possible damage that may result from a stay, 2) the hardship a party may suffer if the case goes

27  forward, and 3) "the orderly course of justice measured in terms of the simplifying or complicating

28  of issues, proof, and questions of law which could be expected to result from a stay." *Lockyer v.*

ORDER – No. 15-cv-01175-LB

United States District Court
Northern District of California

4

1  *Mirant Corp.*, 398 F.3d 1098, 1110 (9th Cir. 2005).

2  Finally, significantly, courts are wary of allowing discovery in one case to be used to evade the

3  strictures imposed in another proceeding. As Professors Wright and Miller explain:

> The courts are alert to preventing discovery procedures in federal civil actions from being employed merely as a device to obtain evidence for use in some other proceeding in which discovery is less extensive. The scope of discovery may be limited to prevent this from happening, or discovery in the civil action may be stayed pending termination of the other proceeding, or other remedies may be resorted to.

8A Charles Alan Wright *et al., Federal Practice & Procedure* § 2040 (3rd ed.) (footnotes omitted)

(citing cases).

* * *

**ANALYSIS**

**1.  The basic decision: The court grants the protective order**

The court agrees with Subscriber that the *Antman* subpoena should be stayed until the Ninth Circuit resolves the *Doe* appeal. This decision may be more practical than doctrinal. Staying the subpoena here is broadly consistent with the stay that this court entered in *Doe*. The subpoenas seek the same information. It would be disjunctive in effect if in this case the court allowed to go forward what in *Doe* it has said should await the Ninth Circuit's decision. No serious prejudice will flow from waiting for the appellate decision. This case will of course be delayed. But the plaintiff has not argued that this would prejudice him. And the court does not see that it will discomfit Uber. Subscriber has agreed to preserve all responsive information. And, in the *Doe* appeal, Uber has sought to extend the briefing schedule. (*Antman*, ECF No. 66-1 at 2 [¶ 2], 4.) Were time of the essence, Uber would presumably move ahead with the appeal as speedily as possible. The only significant potential prejudice that the court can discern would fall upon Subscriber, whose anonymity, once lost to the subpoena in this case, could not be restored. These perhaps rough and practical considerations are enough to justify postponing the subpoena.

* * *

United States District Court
Northern District of California

**2.   This case does not directly implicate the First Amendment**

The parties have offered various arguments supporting their respective positions. Addressing these should give a fuller sense of the court's reasoning in disposing of these motions. And that, in turn, may help shape the future discussion in both *Antman* and *Doe*.

To begin, Subscriber argues that postponing the subpoena until after the Ninth Circuit's decision in *Doe* is necessary to protect its right to online anonymity under the First Amendment. (ECF No. 66 at 2-3, 6, 8.) On this point Subscriber writes: "This Court has already ruled that staying the enforcement of the nearly identical subpoena to Comcast in the *Doe* litigation is warranted to protect Subscriber's First Amendment and privacy rights . . . ." (*Id.* at 2.)

This is not entirely persuasive. The *Doe* and *Antman* cases do not directly implicate the First Amendment — certainly not in the way that other online-anonymity cases have. *Cf., e.g., In re Anonymous Online Speakers,* 661 F.3d 1168 (9th Cir. 2011); *Music Group Macao Commercial Offshore Ltd. v. Does*, 82 F. Supp. 3d 979 (N.D. Cal. 2015). These are not free-speech or free-assembly cases. They're data-theft cases. (The court made this point in its early-discovery order in *Doe*. (*See Doe,* ECF No. 20 at 5-6.)) Furthermore, Comcast's Terms of Service, to which Subscriber agreed, may have left him or her with only a "minimal expectation of privacy." (*Doe*, ECF No. 20 at 5) (citing *Sony Music Ent. Inc. v. Does 1-40*, 326 F. Supp. 2d 556, 566 (S.D.N.Y. 2004)). At least, those Terms of Service affect the privacy and anonymity that Subscriber can plausibly expect. But Subscriber is not wholly without reason: He or she retains some interest in anonymity, some legitimate expectation that his or her privacy will not be breached without good reason, without proof made under governing legal rules, and without some judicial recognition that he or she has a First Amendment interest in preserving anonymity, if not for the sort of activity involved in *Doe* and *Antman*, then for other, legitimate purposes beyond these lawsuits that do implicate speech and assembly rights. The court thus will not be too hasty in discounting First Amendment considerations that, while not arising directly in *Doe* or *Antman*, do lie in the background. With these considerations in mind, and given the relationship of the *Doe* and *Antman* suits, the court thinks that the more prudent course is to await the Ninth Circuit's decision in *Doe*.

\* \* \*

### 3. "Appellate rights" and different legal standards

Subscriber argues that allowing the Comcast subpoena to go forward in this case would harm its "appellate rights" in *Doe*. The purpose of its appeal in *Doe*, Subscriber writes, is to "protect Subscriber's identity." (*Antman,* ECF No. 66 at 3.) If the court compels Comcast to answer the subpoena in this case, "it would essentially nullify Subscriber's appeal." (*Id.*)

Uber finds Subscriber's "appellate rights" argument "meritless." (*Antman,* ECF No. 62 at 6.) Uber rightly observes that the subpoenas in these cases, though identical, are governed by different legal standards. (*See id.* at 4-7.) In *Doe*, the subpoena issued under the rules governing early discovery. (*See Doe*, ECF Nos. 11, 20, 51, 52.) The most basic rule in such cases may be this: '[W]here the identity of alleged defendants [is not] known prior to the filing of a complaint[,] the plaintiff should be given an opportunity through discovery to identify the unknown defendants, unless it is clear that discovery would not uncover the identities, or that the complaint would be dismissed on other grounds." *Wakefield v. Thompson*, 177 F.3d at 1160, 1163 (9th Cir. 1999) (quotation omitted). More specifically, this court authorized the early subpoena in *Doe* because, under the governing case law, Uber had shown "good cause" for the requested early discovery. (*E.g., Doe*, ECF No. 51 at 5-9.) Good cause existed because Uber had 1) identified the Doe defendant with sufficient specificity to show that he or she is a real person who can be sued in federal court, 2) recounted the steps that it had taken to locate and identify the defendant, 3) demonstrated that its case could withstand a motion to dismiss, and 4) shown that the subpoena was reasonably likely to lead to identifying information that would permit service of process. (*See Doe,* ECF No. 11 at 3-6; ECF No. 20 at 2; ECF No. 51 at 5-9.)

By contrast, as Uber rightly notes, the subpoena in this case would issue under the normal rules of discovery. *See generally* Fed. R. Civ. P. 26(b)(1) (scope of discovery); Fed. R. Civ. P. 45 advisory committee note (1970) (scope of nonparty discovery same as generally applicable rule).

The court recognizes that different standards govern the *Antman* and *Doe* subpoenas. The *Doe* appeal asks whether this court correctly applied the "good cause" standard that governs early discovery. That appeal does not implicate the normal relevance standard that governs the present *Antman* subpoena. To that extent, the present decision wouldn't impinge upon the appealed *Doe*

issue. But there are other concerns. For example, as noted earlier, federal courts are wary about

letting discovery in one case elude the boundaries that have been placed on it in other cases. *See*

Wright, *supra*, § 2040. Which points to the underlying practical matter: Whatever the *Doe* appeal

ends up saying about how this court applied the "good cause" rule, forcing Comcast to turn over

Subscriber's information now would indeed nullify the protection that Subscriber currently has

under the pending *Doe* appeal. Doctrine is only one part of the picture; on-the-ground effect is

another. "Judicial discretion and procedural flexibility should be [used]" in such a situation "to

harmonize" the differing rules "and to prevent the rules and policies applicable to one suit from

doing violence to those pertaining to the other." *Campbell v. Eastland,* 307 F.2d 478, 487 (5th Cir.

1962) (quoted in *Robertson v. Qadri*, 2008 WL 162530, *1 (N.D. Cal. Jan. 17, 2008)). The court

thinks it broadly consistent with its stay in *Doe*, and the wiser course overall, to issue the

requested protective order and effectively stay the *Antman* subpoena until the Ninth Circuit

resolves the *Doe* appeal.

* * *

## 4.  Uber is not required to rule out other possible wrongdoers, or conclusively prove its case, before obtaining discovery about Subscriber

In its reply Subscriber suggests that Uber cannot rightly pursue discovery of Subscriber's

identity because it has not ruled out other (equally unknown) parties who may have hacked into

Uber's database, and because it has not proved that Subscriber was indeed responsible for the

breach. (*Antman,* ECF No. 66 at 4-5 ) ("Uber cannot confirm . . . other lawful unidentified

visitors.".)

The court does not agree. The notion that a party seeking discovery about an anonymous

nonparty must first rule out other parties may be properly illogical; it would certainly be

unworkable. Every target of an investigation could rebuff discovery by saying, "Look elsewhere

first." No investigation of this type could ever get underway. There would be nowhere for an

aggrieved plaintiff to start looking for the John Doe who wronged him. Nor must a party

conclusively prove an anonymous defendant's liability before discovering his or her identity. That

is not the standard. The standard — as the court has elsewhere discussed (*e.g., Doe,* ECF No. 11 at

United States District Court
Northern District of California

1   3-4) — asks whether the party seeking discovery has "good cause" to learn the identity of

2   anonymous parties. (*See id.*) As a general rule, again, where the identity of an alleged wrongdoer

3   is not known before a complaint is filed, a party "should be given an opportunity through

4   discovery to identify the unknown defendants, unless it is clear that discovery would not uncover

5   the identities, or that the complaint would be dismissed on other grounds." *Wakefield*, 177 F.3d at

6   1163; *accord Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980).

7   * * *

8   **5. Alternative process for gathering Comcast information**

9   As discussed at the January 14, 2016 hearing on these motions, Subscriber will attempt to

10  exercise his or her rights under the federal Stored Communications Act (18 U.S.C. §§ 2701-12) to

11  obtain from Comcast the activity logs on his account, and any other account information

12  responsive to the Comcast subpoena. The court directs the parties to meet and confer concerning

13  that information, once Subscriber has it, about Subscriber's privacy concerns, and about how

14  responsive material pertinent to the needs of the *Antman* case might be produced to Uber. That

15  production may entail a further protective order.

16  * * *

17  **CONCLUSION**

18  The court grants Subscriber's motion for a limited protective order barring the Comcast

19  subpoena until after the Ninth Circuit resolves Subscriber's appeal in *Doe*. Comcast need not

20  answer the subpoena now. Granting this motion of course entails denying, at least temporarily,

21  Uber's motion to force Comcast to answer the subpoena. After the Ninth Circuit has issued its

22  decision in *Doe*, Uber may re-notice that motion. If it does so, it need not file the motion anew; it

23  may simply notice the motion and refer to the document filed at ECF No. 49. The court further

24  orders Uber to notify Subscriber before it serves any more third-party discovery asking for

25

26

27

28

United States District Court
Northern District of California

1    personally identifying or other information about Subscriber.

2         **IT IS SO ORDERED.**

3         Dated: January 14, 2016

4                                                    _____

5                                                    LAUREL BEELER
                                                     United States Magistrate Judge
6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28